Lee B. **SCHUMACHER**, Appellant,
v.
**UNITED STATES** of America,
Appellee.

No. 15001.

United States Court of Appeals,
Eighth Circuit.

Nov. 16, 1954.

Rehearing Denied Dec. 14, 1954.

Daniel Bartlett, St. Louis, Mo. (H. Jackson Daniel, St. Louis, Mo., on the brief), for appellant.

W. Francis Murrell, Asst. U. S. Atty., and Robert E. Brauer, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a conviction and sentence entered upon a jury verdict finding defendant guilty on all counts of a six-count indictment charging violations of sections 1503 and 1621, Title 18, U.S.C.A.

Count I of the indictment charged that defendant did "knowingly, wilfully, unlawfully, feloniously and corruptly endeavor to influence a witness before the grand jury and to obstruct, influence and impede the due administration of justice", in violation of 18 U.S.C.A., section 1503. Counts II, III, IV, V and VI charged, under 18 U.S.C.A., section 1621, that defendant committed perjury by falsely testifying, while under oath, to certain matters, hereinafter discussed, inquired of him by certain agents of the Bureau of Internal Revenue and by a duly impaneled grand jury sitting at St. Louis, Missouri. Upon the jury's verdict of guilty, the district court sentenced defendant to three years imprisonment on each of the six counts, the sentences on all counts to run concurrently. The court also imposed a fine of $2,000 under Count II of the indictment.

Defendant, by a motion for acquittal made at the close of the government's case and renewed at the close of the entire case, has challenged the sufficiency of the evidence to sustain any of the charges laid in the indictment. Denial of the motion is asserted as error on this appeal. It is now well settled law that where a defendant has been convicted upon several counts of an indictment, and the sentence imposed is less than the maximum sentence which might have been imposed under any one count, the judgment will be sustained if he was properly convicted upon any count. Hulahan v. United States, 8 Cir., 1954, 214 F.2d 441; Hansbrough v. United States, 8 Cir., 1946, 156 F.2d 327; Bowen v. United States, 8 Cir., 1946, 153 F.2d 747; Gantz v. United States, 8 Cir., 1942, 127 F.2d 498. Therefore, we shall not attempt in this opinion to review the evidence as to all counts. Our discussion of the evidence will be limited principally to Count II of the indictment since an additional penalty, in the form of a fine, was imposed on that count.

The errors urged on appeal by defendant may now be stated as follows: (1) The trial court erred in overruling the motion for acquittal on Count II for the reason that there was no evidence that defendant wilfully swore falsely to the matters charged therein; (2) defendant was denied a fair trial by reason of certain actions of the trial court; (3) the trial court committed prejudicial error by reason of certain rulings on evidence during the trial; and (4) the case was submitted to the jury under erroneous instructions.

A brief statement of the factual background out of which these charges against defendant arose is as follows: On or about March 1, 1951, a duly convened federal grand jury sitting at St. Louis, Missouri, commenced an investigation into the conduct and affairs of James P. Finnegan, the then Collector of Internal Revenue in St. Louis, defendant Lee B. Schumacher, and others. Specifically, the grand jury was interested in learning whether Finnegan, defendant and others had attempted to obtain a $10,000,000 tax refund for the May Department Stores Company; whether these same persons had attempted to acquire control of the Nicaro Nickel Plant, property owned by the United States government in Cuba; and whether there was any connection between these two matters. Investigation by the grand jury was prompted by a newspaper article appearing in the St. Louis Post-Dispatch in March, 1951. The grand jury was assisted in its investigation by special agents of the Bureau of Internal Revenue who were also investigating the affairs of the Collector of Internal Revenue in St. Louis.

It appears that early in 1949, defendant and one H. G. S. Anderson, of Muskogee, Oklahoma, were considering the practicability of acquiring control and operation of the Nicaro Nickel Plant in Cuba. This property, owned by the United States government and under the control of the War Assets Administration, was operated at a loss during World War II and was lying idle at this time. Defendant asked Finnegan if he knew anyone at the War Assets Administration who could provide information as to the government's intentions with respect to Nicaro Nickel. Finnegan furnished defendant with the name of an official at War Assets whom defendant contacted. Thereupon began a prolonged series of meetings and negotiations between defendant, Anderson, and others with various agencies and officials of the government in an effort to acquire control of Nicaro Nickel. Ultimately, however, the efforts proved unsuccessful and Nicaro Nickel was acquired by other parties.

During this same period the May Department Stores Company, of which the Famous-Barr store in St. Louis was and is a wholly-owned subsidiary, had pending before the Bureau of Internal Revenue a tax refund claim against the United States in the amount of approximately $10,000,000. The grand jury and special agents were investigating the

charge that Finnegan, defendant, and others attempted to expedite approval and payment of that tax refund claim and that Finnegan and another would receive a 10% commission, or $1,000,000, for their part in securing approval of the claim. The grand jury also heard that in August or September of 1949, defendant told Anderson that the million dollar fee would be applied to the purchase of Nicaro Nickel. A letter, written by Anderson to defendant on February 18, 1950, read as follows:

> "I have been thinking that, if this Nicaro deal can't be completed, we ought to propose to Finnegan and Boyle that they put the million dollars that they expect to get from the May Company into something else.
>
> \* \* \* \* \* \*
>
> "In other words; Don't let this million bucks get away from us."

Defendant was called before special agents of the Bureau of Internal Revenue on November 7, 1951, and testified under oath regarding the Nicaro Nickel and May Department Store Company matters. On November 27, 1951, and again on February 7, 1952, defendant testified before the grand jury on the same matters. H. G. S. Anderson was also called before the grand jury on November 13, 1951, and tesified as to his connection with these matters.

The first count of the indictment charged that defendant corruptly attempted to influence a witness before the grand jury and obstruct the due administration of justice by returning, on November 1, 1951, the letter of February 18, 1950, quoted in part above, to Anderson, together with a note saying:

> "Dear Andy: Please destroy any copies of this letter or any other that refers to Finnegan. Please——."

The note was in defendant's handwriting but the defense was that this note referred to an entirely different letter which defendant returned to Anderson at that time. Defendant denied ever receiving the letter of February 18, 1950, from Anderson.

1. Count II of the indictment charged that defendant, on November 7, 1951, while under oath, stated to certain named agents of the Bureau of Internal Revenue:

> "4. That he (defendant) did not know Fred Salomon of the May Department Stores Company and had never talked to said Salomon, that he (defendant) had never seen any executive in the May Department Stores Company, [and that he did not state to said Salomon that some lawyer could handle the May Department Stores' Company tax refund claim and obtain approval of the same, and that he (defendant) did not call upon said Salomon and tell him that he (defendant) could expedite said tax refund claim and afford said May Company help on the same.] [1]

> "5. That said defendant, at the time he testified as aforesaid, did not believe said testimony to be true, and then and there knew the same to be false, and then and there well knew that he had talked to Fred Salomon, of the May Department Stores Company, and that he knew said Salomon, and said defendant then and there well knew that he had seen Salomon and another executive in said May Company, [and well knew that he (defendant) had conferred with Salomon and stated to said Salomon that some lawyer could handle the May Company Internal Revenue tax refund claim and obtain approval of the same, and defendant then and there well knew that he had called on said Salomon and told Salomon that he (defendant) could expedite said May Company tax refund claim

---

1. The specifications of perjury enclosed in brackets were not submitted to the jury, the trial court stating that there was no substantial evidence to support those charges.

and help said company with the same.]

"Contrary to the provisions of Title 18, United States Code (Rev.), Section 1621." [2]

Therefore, the jury was required to consider only three specifications of perjury under Count II: (1) that defendant did not know Fred Salomon of the May Department Stores; (2) that defendant had never talked with said Salomon; and (3) that defendant had never seen an executive of the May Department Stores.

█ Defendant admitted on the trial and admits here that he made the statements before the Internal Revenue Agents on November 7, 1951, as charged in Count II of the indictment. He also admits that the statements regarding Salomon were incorrect. His defense was that he was honestly mistaken as to the identity of the Salomon about whom he was questioned. The testimony given before the special agents and charged as perjurious was as follows:

"Q. You never talked with him? A. No.

"Q. I think his name is Fred Salomon, General Manager of the May Department Stores. A. No.

"Q. Do you know Mr. Salomon? A. I know who Salomon is. I never met this Sidney Salomon, whoever he is.

"Q. This is Fred Salomon. A. I don't know.

"Q. He is a general manager. Did you ever see any executive in the Famous-Barr Company or May Department Stores? A. No."

Defendant introduced evidence to the effect that, after leaving the special agent's office, he contacted a friend and learned that the inquiry was about Fred Salomon, general manager of the May Department Stores Company, and not Sidney Salomon, a prominent local business man and political figure. Defendant returned and talked to the same agent the following day and told him that he was mistaken in his previous testimony. On this occasion he told the agent that he had seen and talked to Fred Salomon of the May Department Stores Company. Thus the defendant argues that there was no evidence that he wilfully testified falsely with respect to the first and second specifications of perjury in Count II and that it was error to submit the same to the jury.

We think the issue thus presented was properly left for the determination of the jury, under appropriate instructions of the court. The court instructed the jury:

"Now, even though the defendant, you may find testified falsely before the grand jury or before the Agent, that is not sufficient to convict him, nor would it be sufficient that he testified falsely but did so carelessly, or negligently, or hazily, but it must appear that he testified falsely and so testified intentionally, and at the time he testified that he knew the testimony he was giving was false.

\* \* \* \* \* \*

"In passing on the question, whether the defendant testified falsely or truly with reference to that part of the charge laid in count two of the indictment, that he did not know Fred Salomon of the May Department Stores Company and never talked to Fred Salomon, you can consider any and all parts of his testimony given before Govern-

2. 18 U.S.C.A. § 1621:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both."

ment Agents on November 7, 1951, in order that you may satisfy yourselves as to whether the defendant at the time mentioned misunderstood the questions propounded to him in the regard, and you may take into further consideration any statements the defendant made on this subject to said Government Agents on November 8, 1951, that did or would tend to establish any misunderstanding on the part of the defendant in connection with his testimony on November 7, 1951, before Government agents."

No error is assigned as to these instructions. It was within the province of the jury to determine whether defendant was honestly mistaken as to Salomon's identity or whether the original statements were wilfully false and the modification thereof was a mere recantation. We find no error in the action of the trial court in overruling the motion for acquittal as to these specifications of Count II.

As to the third specification of perjury in Count II—that defendant had never seen an executive of the May Department Stores—clearly Salomon, the general manager, would fall within this category. However, in view of the words in paragraph 5 of Count II, that defendant well knew he had seen "Salomon and another executive in said May Company", we deem it necessary to say that the government proved, and defendant admitted, that he had seen and talked to Mr. Bode, the manager of the Famous-Barr store, on the same occasion that he talked to Salomon. Defendant testified that he knew Bode was the manager of Famous-Barr. Bode testified that although he was not an officer of the May Company he was known as an official of the store and that his duties were very definitely of the executive type. The jury could reasonably find that he was an "executive" of the May Company. We find no error in submitting the third specification of perjury in Count II to the jury.

■ 2. The second assignment of error charges that the defendant was denied a fair trial by reason of the trial court's (a) extended cross-examination of defendant which prevented an orderly presentation of the defense; (b) framing of questions and comments in a manner indicating the judge's disbelief of defendant's answers; (c) placing undue emphasis on the government's evidence in the charge to the jury.

Without detailing an extended comment on these various charges leveled at the actions of the trial court, we merely note that the entire transcript of the lengthy trial proceedings has been read and considered and we find no basis therein to support the defendant's charges. On the contrary, the record clearly indicates that the numerous questions and comments by the trial court were made in an attempt to clarify the issues for the jury and to restrict the testimony to what was relevant to the charges laid in the indictment. Nor were the judge's questions and comments confined to the defendant alone. Witnesses for the government were similarly treated. We think the action of the trial court in seeking to clarify the issues for the jury and to confine the testimony to the charges alleged was consonant with the frequently expressed thought that a federal trial judge is more than a mere moderator or umpire. The trial court was fair and impartial in its questioning and commenting in respect to the witnesses, and also in its final resume of the evidence to the jury. Further, we note that the court in its final charge reiterated many times that the jury was the sole and exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. We conclude, therefore, that defendant was not deprived of a fair and impartial trial by reason of the actions of the trial court.

■ 3. Defendant next urges that two rulings of the court during the trial constituted prejudicial error and require

a reversal. The first ruling complained of required defendant to make available to the government a "transcript" of statements his counsel was using to cross-examine Anderson, the chief witness for the prosecution. This "transcript" was a verbatim recordation of a question and answer interview between Anderson and defendant's counsel made by a court reporter in said counsel's office on an occasion prior to this trial when defendant was seeking to have another indictment against him dismissed. The statements in the "transcript" were pertinent to the issues in the present case and defendant's counsel was cross-examining Anderson by reading portions of the "transcript" and asking the witness if he had made such statements at that time and, if so, whether they were correct. Certain of the statements appeared to be inconsistent with Anderson's testimony on the witness stand. The court directed that the "transcript" should be made available to the government for its examination and use, if it so desired, at some time before the witness Anderson was finally excused. Defendant turned over the "transcript" to government counsel and now charges as error the court's ruling which directed him to do so.

But it must be held that defendant is not in a position to urge in this court that the trial court erred in requiring him to turn over the "transcript" to government counsel for inspection. The record shows that no objection was entered by defendant with respect to this ruling of the trial court. Defense counsel, at the time of the ruling, stated, "they can have it [the "transcript"] under your Honor's orders." Immediately prior thereto, upon the court's indicating that it would require the "transcript" to be made available to government counsel, defense counsel suggested, "Could I solve the whole problem by reading the whole thing to the jury so we can get one connected story?" The statements made by defense counsel reflected his acquiescence in, rather than any objection to, the court's requirement.

If it was defendant's position that this requirement was error, he should have made his position known to the trial court. It is a well-settled rule that alleged errors not brought to the attention of the trial court will not be considered on appeal. Mitchell v. United States, 8 Cir., 208 F.2d 854; Blodgett v. United States, 8 Cir., 161 F.2d 47; United States v. Jones, 7 Cir., 204 F.2d 745. Designation of the ruling as error in the motion for a new trial does not cure the failure to make timely objection as this court, generally speaking, will not review the action of the trial court in ruling on a motion for a new trial. O'Brien v. General Accident, Fire & Life Assurance Corp., 8 Cir., 42 F.2d 48.

■■ Nor are we disposed to notice the alleged error under Rule 52(b), Fed. Rules Crim.Proc., 18 U.S.C.A., which provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Our power to notice plain error not objected to will be exercised only to prevent a miscarriage of justice. Mitchell v. United States, supra. Examination of this record convinces us that there is no occasion or necessity for exercising such power here.

■ The second ruling of the trial court complained of was the admission into evidence of a subpoena issued to Fred Salomon and testimony concerning his unavailability as a witness. At an independent hearing held prior thereto, the court had ruled that Salomon's health, as testified to by his physicians, warranted his absence from this trial. The court did not err in admitting into evidence the subpoena and testimony respecting Salomon's absence from the trial. The failure to call a material witness, without good cause shown, justifies, if it does not compel, the inference that the testimony of the absent witness would have been unfavorable. Wesson v. United States, 8 Cir., 1949, 172 F.2d 931; Donnelly Garment Co. v. Dubinsky, 8 Cir., 1946, 154 F.2d 38. Salomon's testimony was an important part of the

government's case, especially on Count II. It would present an anomaly in the law if, while one party may comment upon the absence of an opposing party's witness, Chicago & N. W. R. Co. v. Kelly, 8 Cir., 1936, 84 F.2d 569, the opposing party were not permitted to introduce evidence to excuse the absence of such witness.

▬▬▬ 4. Defendant also contends that two of the court's instructions to the jury were erroneous. Defendant requested the following instruction:

"The court instructs the jury that the Constitution of the United States provides that in all criminal prosecutions, the defendant shall enjoy the right to be confronted with the witnesses against him and hence you shall not consider any newspaper article that may have been admitted in evidence as any proof whatsoever of any fact or statement reported in such article, or as any proof such reported statement was given and for the same reason no testimony or other statement of any witness [other than the defendant himself] given at any other time and place than at this trial, is to be considered by you as proof of any fact asserted in such other testimony or statement."

The court, in giving this instruction to the jury, omitted the portion in brackets and added the following:

"Unless there has been evidence offered of such statements in this trial and admitted in evidence."

Defendant argues that the instruction as given by the court was erroneous because it permitted the jury to consider as substantive evidence extrajudicial statements of persons made outside of the trial.

We do not think the instruction, considered in the light of the procedure followed during the trial, is subject to such criticism. Admittedly, many extrajudicial statements, in the form of newspaper articles, letters, and grand jury testimony in which the questioner attributed statements to others, were admitted into evidence. But on each occasion the court carefully instructed the jury as to the limited purpose for which the evidence was admitted. Early in the trial when the government offered a newspaper article in evidence, the court ruled:

"Members of the jury, an article in the Post-Dispatch has been referred to, as you have heard a number of times, and the article is now going to be read to you. Now, you are not to assume, in hearing this article, that anything said in the article is true. That article prompted certain investigations, and that is the reason it is offered and received in evidence, that it served the purpose of causing investigations to be made, but as to the things that are said in the article, do not consider any of those statements as true.

"Mr. Bartlett: Something more than that. Not only that they just not consider them true, but they are not evidence at all of the facts as stated in the article.

"The Court: Well, I will go farther and say they are not only not to be considered by you as true, but as not evidence of the facts referred to in those articles. Is that satisfactory?

"Mr. Bartlett: Precisely."

Thereafter, as other newspaper articles and letters were offered in evidence, the court instructed the jury that they were not to be considered as evidence of the facts stated therein, but for a very limited purpose, such as to show defendant's knowledge of the grand jury investigation, etc. Defendant's objections to the admission of certain grand jury testimony was overruled on the ground that such testimony was not a statement of fact. For example, at the grand jury hearing defendant was asked:

"Q. Suppose H. G. S. Anderson would say that you had [a conversation with Finnegan regarding the

May Department Stores Company claim]."

When this testimony was read at the trial, the court made the following ruling:

"Mr. Bartlett: May I ask the court to instruct the jury where he says he has been informed by someone else of this fact and that fact, it is not to be considered as evidence of any fact whatsoever?"

"The Court: Well, I don't so understand this question at this time. The motion as to this question will be overruled."

Clearly this was a hypothetical question, not a statement of fact, and the objection was properly overruled. Other objections to questions so constructed were overruled for the same reason. As the trial progressed, the government introduced direct testimony of witnesses covering many of the same statements previously objected to as hearsay. See and compare Finnegan v. United States, 8 Cir., 1953, 204 F.2d 105, 115. These witnesses testified to conversations with defendant which bore directly on many of the questions in issue. Under defendant's requested instruction they could not have been considered as evidence by the jury because they were statements "given at a time and place" other than at the trial. As noted by the trial court in its Memorandum Opinion overruling defendant's motion for new trial, the requested instruction was so broad as to probably be confusing to the jury. We think the instruction given was proper in the light of the rulings made on extrajudicial statements throughout the trial. We find no error therein.

 It is also urged that the court erred in instructing the jury as to the quantum of proof required to convict in a perjury case. The court, in the closing portions of a charge covering approximately sixty pages in the typewritten transcript, made this statement:

"In this case, gentlemen, you have direct and circumstantial evidence. What is circumstantial evidence? * * * Circumstantial evidence is where you undertake to prove a fact as a deduction or inference from some other fact or facts. * * * As far as the law is concerned, you can prove a case either by direct or circumstantial evidence, or a combination of the two. * * * That [circumstantial evidence] is legal evidence and a jury must act upon it the same as if it were direct evidence, when it is satisfied beyond a reasonable doubt. To the extent that the government's proof in this case is circumstantial, the circumstances relied upon to convict must be consistent with guilt alone and not consistent with innocence or the balanced hypothesis of either guilt or innocence.

"The weight to be given to circumstantial evidence can be stated very simply. In order to justify a jury in finding a verdict of guilty, based entirely or substantially on circumstantial evidence, the facts sought to be established by circumstantial evidence must not only be consistent with the guilt of the defendant, but they must be inconsistent with any other reasonable hypothesis that can be predicated upon that evidence. The guilt of defendant may be shown by circumstantial evidence or by both direct and circumstantial evidence. Whether it has been in this case is for you to determine."

Standing alone, this instruction would obviously be erroneous when applied to the five counts of perjury charged in the indictment. Considering the instructions as a whole, however, we do not think the jury was in any way misled as to the degree of proof required to convict on the perjury counts. At the beginning of the charge the court said:

"In giving the law to you, as I understand it, Gentlemen, I am not giving you a series of instructions. Certain parts of this charge apply with respect to certain counts of the indictment, as I shall indicate or try

to indicate; as to other parts, those parts should be accepted and used by you and applied to the whole of the case. It would be improper for you to disregard part of this charge that applies to the case and the various counts and use the remainder. Under circumstances of that kind, the charge would not fit the case. And I am sure you will not do that."

The court then instructed the jury on the presumption of innocence and the meaning of "reasonable doubt". After a somewhat lengthy discussion of Count I, the elements required to establish the crime, and a summation of the evidence in relation thereto, the court stated:

"Now I will discuss counts two, three, four, five and six.

"The law provides that no person may be convicted of the crime of perjury unless the alleged falsity of the statements made by a defendant under oath be established by the testimony of two independent witnesses or by one witness and other corroborating facts and circumstances. In the absence of such proof, the defendant must be acquitted as to such charge or charges where the proof so fails to sustain the charges.

"Two elements must enter into a determination that corroborative evidence is sufficient. First, that the evidence is corroborative evidence that, if true, substantiates the testimony of the single witness's statement; and, second, that the corroborative evidence is trustworthy."

Again, after summing up the evidence as to Count II, the Court told the jury:

"Whether the charge in count II has been proven by the testimony of two witnesses or one witness, and strong corroborative testimony, is a matter for you to determine."

Relative to Count VI, the last charge of perjury, the court instructed the jury:

"If you believe the testimony of the witness Anderson as to his conversation with defendant in the automobile, the witness Bode, store manager or manager of Famous-Barr, and the testimony of Mr. Huber, the accountant, you may then consider whether or not the testimony of these witnesses corroborate one another."

Then, in the closing portion of the charge, the court made its general statement regarding circumstantial evidence.

Upon a careful consideration of the entire charge, we are firmly convinced that the jury was properly instructed and was not misled as to the quantum of proof required to convict the defendant on the charges of perjury. See and compare Boehm v. United States, 8 Cir., 1941, 123 F.2d 791, also a perjury case, where a general charge on circumstantial evidence was given by the trial court and approved by this court.

We conclude that the defendant received a fair and impartial trial, free from prejudicial error, and that the jury's verdict of guilty was supported by substantial evidence. The judgment is affirmed.