STATE of Missouri, Respondent,

v.

Roy Lee ADAMSON, Appellant.

No. 48011.

Supreme Court of Missouri,
Division No. 2.

May 8, 1961.

James J. Rankin, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was found guilty by a jury of the forgery of a check. The court, finding that he had been convicted and imprisoned for prior felonies, sentenced him to a term of ten years in a correctional institution. Much of the State's evidence came from two men who admitted participation in the preparation and passing of the series

of checks out of which the present charge arose. One of these was Moss Edward Shoemaker; the other, Albert Wendell Hall. Shoemaker lived in Mexico, Missouri; Hall in St. Louis.

The evidence was such that the facts now related could be found therefrom. Shoemaker and one John Gilman had met in the penitentiary; later both worked for a time in 1957 for a contractor at Montgomery City, Missouri, by the name of John R. Burton; they were paid by checks. Both of them had known defendant Adamson in St. Louis, where the latter's mother operated a tavern. In May 1958, defendant, Gilman and Shoemaker were together at this tavern and there either defendant or Gilman introduced Shoemaker to Albert Hall, who was a musician in the tavern. One of them then stated that Hall was "good at putting down checks." The subject of checks was discussed further and someone produced a check stub of John R. Burton; defendant examined this and talked about the paper. At defendant's request, Shoemaker and Gilman drove to Poplar Bluff, met defendant there, and picked up a portable printing press, a check protector and a heavy suitcase which defendant had stored there in a garage. They then brought these things to Mexico, where they put them in a storage space or room over a garage, at a location where Shoemaker was helping a man build a house, and where he had some of his personal things stored. A little later, defendant came there from St. Louis and the three, defendant, Shoemaker and Gilman, got out these articles, took them to a room of the house, and printed approximately fifty check forms purporting to be drawn on the Mexico Savings Bank, and in the likeness of those used by John R. Burton, with Burton's name printed thereon in two places. Defendant brought the paper, set the type and operated the press. These three talked about the cashing of the checks and decided that it should be done in Mexico; defendant went back to St. Louis and the other two saw him there later on one or more occasions, and discussed further the cashing of

the checks. Defendant told them that Hall would pass the checks. On or about June 19, 1958, defendant instructed Hall to go to Mexico, that night if possible, to meet Shoemaker and Gilman "to pass some bogus checks." He also told Hall that it "would be easy." On June 19, 1958, defendant told Shoemaker by phone that Hall would be in Mexico the next morning. Hall came there, made contact with Gilman and Shoemaker, having gotten Shoemaker's phone number from defendant. Hall was taken to a place outside of town where Shoemaker was staying, and Hall there filled in dates, names and amounts in ink on sundry of the "Burton" checks, perhaps about twenty-five. One of the other two present used the check protector in each instance to insert, in words, the exact amount of the check. Most of these checks were written for $74.46, payable to a "Carl R. Smith." Defendant was not present at this time. The checks were signed in the name of Pearl Thompson (underneath Burton's printed name), a person who actually signed Burton's authentic checks. After this task was completed, the three went into Mexico, where Hall went to various places of business, purchasing a small amount of merchandise, paying for it with one of the checks, and receiving the balance of the stated amount in cash. The check specified in the present information was passed at the Bealmer Feed and Seed Store to purchase $2.05 worth of dog food, and to receive the balance of $72.41 in cash. It was offered and received in evidence as State's Exhibit 1. Several of the other checks were also received in evidence, as identified by one or both of the participants and by the persons who received them. After this escapade was completed, late in the afternoon, the three drove out on a country road and divided the money into four "stacks." There is some inconsistency in the testimony about the division of the money but that is immaterial here. Hall proceeded back to St. Louis. The Bealmer check was recognized at the bank as a forgery and it was not paid.

Both Hall and Shoemaker admitted previous felony convictions. Hall was confined

in the Algoa Reformatory at the time of trial and was brought from there to testify. Shoemaker admitted that there was a case pending against him growing out of the present transactions and that he thought he might get some benefit from testifying; Hall insisted that he did not know definitely whether such a case was pending against him or not, but he "assumed" that there was; he indicated also that he hoped for some benefit from his testimony. It is apparent, however, that the jury chose to believe the essentials from the testimony of these witnesses. The trial court, out of the presence of the jury, heard evidence of defendant's prior felony convictions and made a finding of three; these were: (1) Burglary and Larceny; (2) Forgery, second degree; (3) Obtaining money by means of a bogus check.

■ No brief has been filed here for the defendant. He was ably represented at the trial. We shall consider the assignments raised in the motion for new trial. Two of these consist of assertions of error in the overruling of defendant's oral motions for acquittal. Defendant was charged with acting in concert with the three previously mentioned persons, willfully, feloniously and with intent to defraud, in the commission of forgery (more specifically described in the information as in § 561.011, RSMo 1959, Laws 1955, p. 505, V.A.M.S.). It is entirely obvious here that forgery was committed, and there was substantial evidence to show that defendant was a party thereto. The point merits no further discussion.

■ It is contended that because the offense was committed prior to the effective date of our present Second Offense Act, § 556.280, RSMo 1959, V.A.M.S.[1] the provisions of that Act permitting the court to fix the punishment were applied ex post facto. The trial court proceeded under the new Act, and properly so, for this court has held that the change thus made was procedural, that the new Act might properly be applied upon trial for an offense commit-

ted before its effective date, and that no constitutional rights of a defendant were thus violated. State v. Morton, Mo., 338 S.W.2d 858; State v. Griffin, Mo., 339 S.W. 2d 803. We note with some interest that when this objection was made at the trial, the court, allowing considerable latitude, offered to submit the question of prior convictions to the jury "under the old law"; but counsel rather emphatically declined this offer, taking the position that the old law had then been repealed and that no habitual criminal act was applicable.

■ Two of the other assignments may be considered together; they assert error in receiving evidence of other crimes than the one charged in the information, and in refusing to declare a mistrial therefor or to instruct the jury to disregard the testimony. The evidence complained of is that showing the printing of "about fifty checks," and also evidence identifying State's Exhibit 1 as one of those so printed. The facts of this case are such that it would have been physically impossible to show the printing, preparation, and writing of the check described in the information without showing the general activity involving the group of checks. The State is not to be penalized if parties so entangle their illegal affairs that one offense cannot be proved without also proving others. In State v. Scown, Mo., 312 S.W.2d 782, after discussing the general rule rendering proof of some other crime inadmissible, we said at loc. cit. 789: "But the cases recognize well-defined exceptions to the rule. Thus, in State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, 768, this court said: '* * * Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in

---

1. All statutory citations are to this revision, unless otherwise indicated.

proof. State v. Garrison, 342 Mo. 453, 116 S.W.2d 23, 24. * * *' See also: State v. Saussele, Mo., 265 S.W.2d 290, quoting the above with approval; State v. Harrison, Mo., 285 S.W. 83, 20 Am.Jur., Evidence, § 310. * * * One recognized exception to the general rule excluding evidence of other crimes is that the evidence is admissible when there is a 'common scheme or plan embracing the commission of separate similar offenses * * *' " See, also, State v. Green, Mo., 305 S.W.2d 863, 872; State v. Fischer, 297 Mo. 164, 249 S.W. 46, 49; State v. Fisher, Mo., 302 S.W.2d 902, 905; State v. Garrison, Mo., 305 S.W.2d 447. It would be difficult to conceive of a better example of a "common scheme" than was shown here in the preparation and passing of these various checks. Evidence of the integral parts of the scheme were admissible to prove elements of the State's case, not the least of which was an "intent to defraud" in the words of § 561.011. There was no error in the admission of this evidence, or in the refusal of the motions.

■ The next point made again involves alleged error in refusing a motion for a mistrial. When Hall was testifying, the prosecutor asked him if he had had "any relations" with the defendant in the eight months he had known him prior to June 20, 1958. Hall answered, after objection, that he had talked with defendant and that: "* * * I passed some checks in St. Louis that came through him." Thereupon defense counsel moved for a mistrial. After an extensive colloquy at the bench, the court ruled that the evidence was inadmissible, sustained the objection, and instructed the jury that the answer was stricken and that the jury would not consider it in its deliberations. It declined to declare a mistrial; the motion therefor was based upon the contention that the answer constituted evidence of wholly unconnected crimes and was most prejudicial. On this point the court stated to counsel, in part: "I do not feel, however, that sitting as a Judge and instructing the jury and instructing the witness and hearing the testimony that there

has been a sufficient error or prejudice aroused to justify declaring a mistrial." It is apparent that the court gave the matter serious consideration and arrived at a studied conclusion. We only reverse for error in such instances where we can consistently find that the trial court has abused its discretion in refusing a mistrial. State v. Taylor, Mo., 324 S.W.2d 643, 647; State v. Statler, Mo., 331 S.W.2d 526, 531; State v. Thost, Mo., 328 S.W.2d 36, 40; State v. Clark, Mo., 331 S.W.2d 588, 591; State v. Johnson, Mo., 286 S.W.2d 787, 795. Assuming that the statement of the witness was inadmissible, we find no abuse of discretion. The trial court was in a better position to determine the question of prejudice than we are. It is probable that the statement of the witness did not come as a total surprise to the jury; there was evidence throughout the case from which the jury might well have inferred prior experience on defendant's part in the preparation or handling of bogus checks. Such a situation particularly lends itself to the exercise of a broad discretion by the trial court. Defendant says that the bringing out of this statement was deliberate on the part of the prosecutor; we note that the court strongly warned against a recurrence. In any event, the question resolved itself solely into a determination of prejudice, and we may not say that the court erred.

■ Counsel for defendant cross-examined Hall rather vigorously concerning his knowledge of a supposed "hold order" against him at Algoa arising out of this transaction, his expectation of benefit from testifying, and his prior convictions. Counsel further asked Hall whether he had not had a "long discussion" with the prosecutor concerning what his testimony would be. The witness replied that he had talked to "nobody." The question was then repeated twice, in substance, and Hall consistently denied any and all conversations about his testimony. On redirect, the prosecutor brought out that the witness had testified in the Magistrate Court at Shoemaker's preliminary hearing. When the witness was

then asked whether he there told the facts about "this case," an objection was made on the ground of hearsay. The objection was sustained at that time. The prosecutor then stated: "It would explain how I would know what his testimony would be * * *." In the colloquy which followed counsel objected to the prosecutor's statement as outside the record and as injecting hearsay because it conveyed to the jury the idea that the witness had testified previously in the same manner; he also asked for a mistrial on these grounds. The trial court, regarding all this as in the nature of a reply to the anticipated argument of defendant that the witness had been untruthful in denying all conversations, overruled the objection and denied motions to strike and disregard and for a mistrial. The witness was then permitted to state further that he had testified at the preliminary and that he was questioned at length about "these same matters." Actually the statement of the prosecutor added little to the effect of the original answer of the witness that he had testified at the preliminary hearing. Counsel have asserted that all of this conveyed the idea to the jury that the prosecutor knew facts which were not in evidence, and which corroborated the witness' testimony; also, that there was an improper attempt to rehabilitate a witness without a showing of surprise. While the statement of the prosecutor was unnecessary, in the presence of the jury, we hold that it was not prejudicial. If the evidence or the statement were otherwise improper, both came into the case as legitimate explanations in answer to an attempt to discredit the witness. By way of analogy, see State v. Hermann, Mo., 283 S.W.2d 617, and authorities there cited; Schumacher v. United States, 8 Cir., 216 F.2d 780, 787–788; 348 U.S. 951, 75 S.Ct. 439, 99 L.Ed. 743.

■ Complaint is also made of State's Instruction S–2. We find it unnecessary to quote it here. The complaints are that it constituted an improper comment and emphasis on certain parts of the evidence, and that it went outside the scope of the infor-

mation. Specifically, counsel complain of references to the printing of the check forms, to defendant's instructions to Hall to proceed to Mexico, to the filling in of the check on which this charge is based, by Hall, Shoemaker and Gilman; and also to the submission that if all preceding findings were made, then defendant might be found guilty though not actually present when the check was filled in. There is no suggestion that the instruction did not contain all necessary elements. As we view the instruction, the court merely hypothesized the facts which were essential to a finding of guilt, as taken from the actual evidence, and applied the recognized law thereto. There was nothing unusual or improper about this; the factual elements were, essentially—a conspiracy between named persons to defraud by forgery, the printing of the check form of Burton, the sending of Hall to Mexico, and the filling in of this check, purporting as it did to have been made by Burton but not so in fact. We note that defendant's counsel had emphasized in cross-examination that defendant was not present when the check was filled in. The statement that a finding of guilt might be made though defendant was not present when the check was filled in, if all the other required findings were made, merely applied the recognized law to the factual situation shown in the evidence. See State v. Slade, Mo., 338 S.W.2d 802, 806. There is no undue comment or emphasis in the instruction and no variance from the information. As to the latter phase, the court merely submitted to the jury specific hypotheses to fit the evidence, the charge being stated in more conclusory language in the information. No complaint is made of the degree of proof required of the State, and we note that the court gave for the defendant an unusually rigorous instruction on the burden of proof and the presumption of innocence.

■ We have also examined those portions of the record required by Rule 28.02, V.A.M.R. The information (Count I) omits some of the traditional and dust-

covered verbiage often used in criminal charges. It follows the wording of § 561.-011, subd. 1(1), and charges that defendant did, with intent to defraud and acting in concert with named persons, make a written check such as is commonly relied on in business transactions and purporting to have been made by John R. Burton (by an agent) but which was not signed or made by Burton or with his authority; it then proceeded to describe the face of the check in detail. The offense was stated to have been committed willfully and feloniously. Prior convictions and discharges were sufficiently charged. We hold the information sufficient. We are not concerned here with Count II, charging the uttering of the same check, for that count was dismissed before submission of the case. We find no error respecting the sufficiency of the verdict or of the judgment and sentence. The punishment was within the limits of § 561.011, although the maximum. The judgment is affirmed.

All concur.