STATE of Missouri, Respondent,

v.

John Daniel GILLMAN, Appellant.

No. 48529.

Supreme Court of Missouri,

Division No. 2.

Feb. 12, 1962.

Motion for Rehearing or for Transfer to Court en Banc Denied March 12, 1962.

Joseph Langworthy, Pacific, for appellant.

Thomas F. Eagleton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Appellant was found guilty by a jury of the forgery of a check. The trial court, after finding that he had been convicted and imprisoned for prior felonies, determined his sentence to be seven years in a correctional institution. Following sentence and judgment this appeal was taken.

This is a companion case to State v. Adamson, Mo.Sup., 346 S.W.2d 85, and in this case, as in that one, much of the State's evidence came from Moss Edward Shoemaker and Albert Wendell Hall who admitted participation in the preparation and passing of the series of checks out of which the present charge arose. From the evidence it reasonably could be found that appellant, Adamson and Shoemaker, working together, caused to be printed a number of check forms to resemble the printed checks used by John R. Burton, a contractor, at Montgomery City, Missouri. On each of fifteen checks introduced in evidence the name of "Carl R. Smith" was written in as payee and the word "bonded" was perforated into the paper over the name of the payee. The amount of each check was $72.41, and each was signed in the name of Pearl Thompson, a person who actually signed Burton's authentic checks. The forged checks were passed by Hall. In most cases he would make a small purchase at a business establishment, give a forged check in payment, and receive the balance of the face amount of the check in cash. The check forming the basis of the present charge, identified as State's Exhibit No. 1, was passed at the Mexico Lumber Company to purchase 50 pounds of nails for $7.50. Appellant and the other three persons involved in the scheme divided the money received, but perhaps not equally.

Appellant's first point is that "The court erred in overruling defendant's oral pretrial motion for dismissal as to Count I [upon which appellant was tried, Count II having been dismissed] of the amended information upon the grounds that, as shown by the records in this case and in cases No.

8823 and No. 8824, that charge is the same as the charge in Count I of the informations in these two cases and that on this charge defendant was brought before the Magistrate Court of Audrain County on March 11, 1960 for preliminary hearing; and said Court at that time continued these causes to May 13, 1960, in violation of Section 544.320, V.A.M.S., Supreme Court Rule 23.06, 42 V.A.M.S.[1], and defendant's right to a speedy trial * * *."

■ From the allegations in this point, which do not prove themselves, and from the somewhat confusing and unresponsive argument in the brief, it appears that although appellant makes no complaint whatever as to the procedure followed in this case as to the preliminary hearing he contends that on oral motion (not shown in the transcript) the trial court should have dismissed Count I of the information because in two other criminal cases pending against him the Magistrate Court improperly continued the preliminary hearings thereon. None of this is shown in the record before this court. Appellant admits in his argument that the question is "probably not principally one of jurisdiction" but is "more properly a policy question." His argument appears to be that even though the alleged improper continuances in the other cases had no bearing on his conviction in this case and even though the requested action might permit or cause a guilty man to go free, still this court as a matter of policy should reverse this case outright to prevent such continuances in the future (but he admits there is now a remedy for such situations) and to put a stop to a wholly unrelated alleged practice of the police of the City of St. Louis with respect to holding persons in custody. The statement of the point and the summary of the argument sufficiently demonstrate that there is no merit whatever to appellant's first point, and it is disapproved.

Appellant's second point is that the trial court erred in overruling his motion for a mistrial "upon the grounds that the prosecuting attorney knowingly permitted false and perjured testimony to be used against defendant and suppressed testimony favorable to him, * * *."

Moss Shoemaker testified for the State and in doing so admitted that he had participated in the scheme to print, fill out and pass the forged checks, and he testified that appellant participated in the entire scheme. Counsel for appellant then cross-examined him at length and the witness was excused. At the request of appellant's counsel Shoemaker was subsequently recalled for additional cross-examination, and after some questions concerning previous convictions, the following occurred:

"Q. Didn't you, in fact, discuss your testimony in this case with Mr. Levvis? [Prosecuting attorney].

"A. No. Sir.

"Mr. Levvis: Which testimony are you referring to?

"Q. Any testimony. Weren't you in fact promised that if you would testify against Mr. Adamson and Mr. Gillman or either of them—?

"A. I said that I would.

"Q. Weren't you in fact promised then that you would be given a lighter sentence?

"A. I was told that I couldn't be promised anything, that it was up to the Judge.

"Q. Didn't you understand though that the effect of it would be to receive a lighter sentence?

"A. Well, I was told that it would be considered seriously.

"Q. Were you not told that such a recommendation would be made by the prosecuting attorney?

"A. I didn't know for sure what the prosecutor—.

1. V.A.M.R. Crim.Rule 23.06.

"Q. Were you told that?

"A. No, sir, I wasn't told just what was going to be recommended.

"Q. But weren't you told in effect that it would be a lighter sentence if you testified?

"A. I was told that it would be considered.

"Q. Were you told or were you not told that Mr. Levvis would recommend a lighter sentence if you testified?

"A. I wasn't told by Mr. Levvis that he would recommend anything.

"Q. Were you told—I didn't ask you whether you were told by Mr. Levvis or not, I asked you if you were so told?

"A. I was told if I testified that it would be took into consideration."

Counsel for appellant then continued his cross-examination on other matters and the witness was excused. During the presentation of appellant's case the prosecuting attorney was called as a witness. His testimony, in substance, was that he did talk to Shoemaker on two occasions, once in the office of Shoemaker's attorney, and once during the trial of Adamson, a co-conspirator, and that during the discussion in the attorney's office the punishment of Shoemaker "may have been touched upon" at that time. Counsel for appellant moved for a mistrial "upon the grounds that the State [sic] has introduced and was allowed to elicit, without challenge, testimony by one of its own witnesses in the case, Mr. Shoemaker, to the effect that he had not discussed the case with the prosecuting attorney when the prosecuting attorney knew in fact that that was not true, as shown by Mr. Levvis's testimony."

It is perfectly obvious that the State did not introduce and did not elicit the testimony of Shoemaker that he had not discussed his testimony with Mr. Levvis. Such testimony was brought out by counsel for appellant. It is appellant's position that

when Shoemaker made the categorical denial that he had talked to the prosecuting attorney about his testimony, due process required that the prosecuting attorney "speak up if a false statement is made." In Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, it was held that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment, * * *. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." It was further held that the principle "that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." It is the above language in the Napue case upon which appellant principally relies.

■ Appellant's contention is without merit for at least two reasons. Assuming, but certainly not deciding or even implying, that there was a duty on the prosecuting attorney in the circumstances of this case to speak up when Shoemaker made a categorical denial that he had discussed his testimony with the prosecuting attorney, the record shows that the prosecuting attorney did then and there without any delay speak up and present the question as to what testimony reference was being made. Counsel for appellant then continued his cross-examination, apparently to show precisely to what testimony reference was being made, and Shoemaker admitted that he was told that if he testified against appellant he could not be "promised anything, that it was up to the judge;" that he was told that the fact he testified "would be considered seriously;" that he was not told "just what was going to be recommended;" and that he was not told by the prosecuting attorney "that he would recommend anything." The sequence of the questions and their substance clearly and unquestionably indicate that in making his answers Shoemaker was

referring to what was and was not told to him by the prosecuting attorney. Appellant does not contend on his appeal, nor has he contended at anytime so far as we are able to ascertain, that the above testimony of Shoemaker concerning promises made or not made to him by the prosecuting attorney or anyone else is not true. Certainly, there is no evidence which even suggests that it is not true. It is clear that as the result of the further cross-examination, the prosecuting attorney was entitled to conclude, as would any reasonable person under the circumstances, that the first categorical answer had been clarified by the subsequent answers. Under these circumstances there was no duty on the prosecuting attorney to advise the court or the jury any further on the subject.

Assuming, however, that the answers brought out by the further cross-examination of Shoemaker were not complete, what further fact was there to be shown? At most it was that the prosecuting attorney had discussed with Shoemaker the substance of his testimony, which he not only had a right to do but under the circumstances had the duty to do in the proper preparation of his case. The prosecuting attorney was called to the stand and he testified that he did discuss with Shoemaker "certain points of the case with him one time, I believe, in his attorney's office," and that he called him into his office during the Adamson trial to "ask him about some points," but he was not certain about this second discussion. He further explained that since Shoemaker had testified at the preliminary hearing of appellant he knew "what his testimony was in the main." Therefore, even if Shoemaker's explanation was not complete, the jury was fully advised upon the subject and it had before it every factual element about which appellant then or now contends that the jury should have known or been informed. In fact, appellant asserts that he believed that the prosecuting attorney was telling the truth, and he therefore admits that the truthful situation was fully and completely presented to the jury from the precise source he says it should have come. The cases relied upon by appellant pertain to the situation where the State knowingly caused or permitted perjured testimony to be admitted or suppressed vital evidence material to the issue of guilt or penalty, and the correct and true facts were never presented to the jury so that they could take those facts into consideration in considering its verdict or the penalty. See Napue v. People of State of Illinois, supra, Alcorta v. State of Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9; Pyle v. State of Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; United States ex rel. Almeida v. Baldi, 3 Cir., 195 F.2d 815, 33 A.L.R.2d 1407; United States ex rel. Thompson v. Dye, 3 Cir., 221 F.2d 763, certiorari denied, Commonwealth of Pennsylvania v. United States ex rel. Thompson, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773. See also the cases cited in the annotation at 33 A.L.R.2d 1421. The record does not present the slightest indication of any attempt on the part of the prosecuting officials to act improperly or without complete candor. The jury had before them what appellant admits constituted the true facts and they also had before them the testimony of Shoemaker. They were then in a position to determine who was telling the truth and to judge Shoemaker's credibility under the circumstances. We find no merit whatever to appellant's second point.

After the prosecuting attorney had testified as above indicated, counsel for appellant sought to recall Shoemaker for a third cross-examination. This request was denied and appellant now asserts that the court "abused its discretion under the circumstances." After Shoemaker had been cross-examined extensively on two separate occasions and the State had closed its evidence, there was no abuse of discretion in refusing a third cross-examination on a collateral issue when admittedly there was no showing that any testimony would be received different from that already given by the witness. As to the trial court's discretion in the matter see State v. Neal, 350 Mo. 1002, 169 S.W.2d 686.

Appellant next asserts that the court abused its discretion "in permitting the prosecuting attorney to say in his opening statement, to attempt to prove, and to argue to the jury, that the defendant was guilty of other crimes in the uttering of other forged instruments than the one charged in the second amended information." The point does not set out with particularity the objected to statements, or even their substance, and no reason is advanced as to why the matters complained of constituted error. Appellant admits in his brief that "ordinarily there would be no question but what in this type of case such matters could be shown to show intent." It is apparent, however, from the argument that reference is had to the forging of other checks.

The precise contention here made was ruled in the companion case of State v. Adamson, supra, 346 S.W.2d at p. 87, and it was there stated: "The facts of this case are such that it would have been physically impossible to show the printing, preparation, and writing of the check described in the information without showing the general activity involving the group of checks. The State is not to be penalized if parties so entangle their illegal affairs that one offense cannot be proved without also proving others." It was further pointed out in the Adamson case by quoting from State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765, 768, that "Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof." In State v. Scown, Mo.Sup., 312 S.W.2d 782, it was held that one recognized exception to the general rule excluding evidence of other crimes is that the evidence is admissible when there is a " 'common scheme or plan embracing the commission of separate similar offenses.' " In the Adamson case, referring to the same fac-

tual situation we have here, it was said: "It would be difficult to conceive of a better example of a 'common scheme' than was shown here in the preparation and passing of these various checks. Evidence of the integral parts of the scheme were admissible to prove elements of the State's case, not the least of which was an 'intent to defraud' in the words of § 561.011." The evidence clearly was admissible, and being so the prosecuting attorney properly could mention it in his opening statement and in his argument to the jury. The point is without merit.

Appellant next contends that the information was "insufficient under the facts as developed on the trial of the case in that it did not with sufficient particularity specify which one, of a number of identical checks introduced in evidence by the State, defendant was charged with forging." Count I of the information follows the wording of Section 561.011, subd. 1(1) R.S. Mo 1959, V.A.M.S., and charges that appellant did, with intent to defraud and acting in concert with named persons, make a written check such as is commonly relied on in business transactions and purporting to have been made by John R. Burton by an agent but which was not signed or made by Burton or with his authority. It then describes the face of the check in detail, and the offense is alleged to have been committed willfully and feloniously.

An information identical in form and substance was held sufficient in State v. Adamson, supra, 346 S.W.2d at p. 90, and appellant expressly admits in his brief that the information was "sufficient on its face." He contends, however, that we should look to the evidence, and in that manner we will find that the description in the information fits other checks. If we may look to some of the evidence, as appellant contends, to discover that the information is indefinite we may look at all the evidence, and when we do we find that the check upon which the information is based was identified as State's Exhibit No. 1, introduced into evi-

dence, and distinguished from the others in that it was negotiated at the Mexico Lumber Company. The State's case was submitted to the jury by specific reference in the instructions to "the written check that has been marked State's Exhibit No. 1 and introduced in evidence." In addition, Supreme Court Rule 24.03, V.A.M.R., provides that "When an indictment or information alleges the essential facts constituting the offense charged but fails to inform the defendant of the particulars of the offense sufficiently to prepare his defense, the court may direct or permit the filing of a bill of particulars. A motion for a bill of particulars may be made only within ten days after arraignment and before the trial commences or at such other time before or after arraignment as may be prescribed by rule or order of the court." Appellant could have availed himself of the provisions of this Rule and made a request to the court for an appropriate order under the circumstances if he had any doubt as to the identity of the check he was charged with having forged. There was no discrepancy between the description of the check in the information and that shown by the evidence and referred to in the instructions. The judgment rendered on the information is a bar to any subsequent prosecution for the same offense. The contention is without merit.

■ Appellant also challenges the sufficiency of the verdict. He says that "with all the statements, evidence and arguments concerning the uttering of other checks and in the absence of any showing that the jury knew what was in the information or that the State elected to stand only on Count I, it is not at all clear which check, if any, the jury found that defendant had forged."

Under Instruction No. 4, the verdict directing instruction, the jury could find the appellant guilty only if it found that he had forged the check identified as State's Exhibit No. 1 and introduced in evidence. The court instructed the jury that if it did so find then it should return a verdict in this form: "We, the Jury, find the defendant guilty as charged in the Information." The jury had not seen and had no occasion to see the information. The jury was to be guided by the court's instructions, and the court properly instructed them as to the form of the verdict if they found the facts as submitted in Instruction No. 4. This form of verdict was approved in State v. Adamson, supra, at p. 90.

■ Appellant's next point is that the "court erred in permitting objectionable hearsay statements not made in the presence of defendant to be introduced into evidence." There is no assignment of error in the motion for new trial relating to this matter which is any more specific than the quoted point. Such an assignment preserves nothing for appellate review, State v. Thompson, Mo.Sup., 299 S.W.2d 468, 471, and the point consisting only of an abstract statement with no reference to the evidence claimed to have been erroneously admitted presented nothing for appellate review even if the matter had otherwise been preserved. Turner v. Calvert, Mo.Sup., 315 S.W.2d 118.

During the presentation of the State's case the prosecuting attorney handed to the witness then testifying what had been marked for identification as State's Exhibit No. 1 and asked the witness to identify it. Counsel for appellant said: "I'm going to object and ask that I be permitted, to see the exhibit before it's handed to the witness." The trial court overruled the objection, and in doing so stated that the exhibit was not then being offered but was being identified. State's Exhibits Nos. 2 through 15 were then identified by the witness. At the court's direction all of these exhibits were then shown to counsel for appellant who asked that he be permitted at that time "to ask some preliminary questions of this witness concerning these so I can raise further objections as to the admissibility." This request was granted. State's Exhibits Nos. 1 through 15 were offered in evidence and later admitted, but not until counsel for appellant was afforded full opportunity to inspect them and enter his objections. Appellant now

contends that the trial court "abused its discretion in refusing to allow counsel for the defendant to see the State's exhibit *before* they were exhibited to the witness, in order that counsel could make objections to them, particularly in view of the Missouri law to the effect that such exhibition in front of the jury constituted the introduction into evidence of such exhibits; and such error and abuse of discretion further deprived defendant of his liberty without due process of law * * * in that it did not permit him to be heard on the subject of the admissibility of such exhibits into evidence until after they were in effect admitted."

Appellant cites no case to the effect that it was an abuse of discretion for the court to refuse his counsel the right to inspect the State's exhibits before they were identified. If he desired to inspect the checks before trial he had available to him the procedure set forth in Supreme Court Rule 27.19, V.A.M.R. During the trial the court had broad discretion to determine the orderly procedure and presentation of evidence. There was no abuse of discretion in that respect.

Appellant presents the contention that "such exhibition constituted the introduction in evidence of such exhibits." He cites State v. Robinson, Mo.Sup., 325 S.W.2d 465, which held that an exhibit was actually in evidence when it "had in fact been exhibited to the jury and witnesses were examined and cross-examined concerning it." This, of course, did not happen in this case. In his point and argument appellant does not give a complete or fair presentation of what occurred. Shoemaker testified that Adamson operated the printing press and printed the checks, and "as he took them out of the press, Gillman [appellant] and I spread them out so they'd dry." The record then shows the following:

"Mr. Langworthy: I'm going to object at this time.

"(Without the hearing of the Jury).

"Mr. Langworthy: (continuing) Under the law, as I understand it, we have a very ticklish question about the exhibition of any possible exhibits to the jury before they have been admitted in evidence. I see Mr. Levvis has what looks like some checks in his hand. I'm going to object to the exhibition of those to the jury until they have been admitted in evidence.

"The Court: He's not exhibiting them.

"Mr. Langworthy: I know, but I want to make sure they aren't exhibited.

"The Court: You don't raise any claim that they are exhibited now, do you?

"Mr. Langworthy: I don't think they can be seen but I don't want them to be.

"The Court: They won't be, any more than can be seen from the distance that the witness would have them in his hands. He will ask him to identify them, I assume. Right now there is clearly no exhibition of them."

Appellant does not contend that he was denied the right to present any objection he desired to make. He could not possibly have been prejudiced by the jury seeing the checks in the hands of the prosecuting attorney, if they did, or by observing the procedure of identification when subsequently the checks were properly admitted in evidence and exhibited to the jury. The point is without merit.

Appellant's next point is as follows: "The Court erred and abused its discretion in too actively participating in the trial in this criminal case in suggesting courses of procedure to the prosecution." This point is identical with the assignment of error in the motion for new trial. The assignment of error and the point preserve nothing for appellate review. State v. Gerberding, Mo. Sup., 272 S.W.2d 230, 234; State v. Weid-

lich, Mo.Sup., 269 S.W.2d 69, 71. We have read the record carefully to see if there is any basis for invoking Supreme Court Rule 27.20(c), and we find that not only did no improper participation occur on the part of the trial court, but that the record discloses the trial judge demonstrated judicial ability, complete fairness, and remarkable patience under the circumstances.

Appellant next asserts that the court erred in permitting the prosecuting attorney to call appellant a "little angel boy" in oral argument because "such statement was not justified by the evidence and was an improper argument and attempt to appeal to prejudice."

■■■■ The statement of the prosecuting attorney was as follows: "But the State and any prosecutor has perfect right to use as witnesses persons who have taken part in the crime for which the defendant is being tried. The only defense here by this little angel boy—." Appellant then objected because "it's obviously meant not in good faith and is used as a derogatory epithet." Appellant elected to testify in this case and he admitted participation in two armed robberies. He also admitted that he accompanied Shoemaker to Poplar Bluff when the printing press was obtained, that he saw the checks being printed, that he knew that Hall had filled them out, but he denied any participation whatever in the scheme. Both Shoemaker and Hall had testified to acts of appellant which if true made him an active participant in the scheme to forge the checks. While it is true that the prosecuting attorney should not apply denunciatory personal epithets to the defendant or his witnesses, State v. Taylor, 320 Mo. 417, 8 S.W.2d 29, 37, in this case he could properly comment on appellant's character and he had a right to comment on the truth or falsity of the testimony, including that of appellant. State v. Woods, 346 Mo. 538, 142 S.W.2d 87, 89. This mild sarcasm obviously was a comment on appellant's admission of acts which demonstrated knowledge on his part of the crime while deny-

ing any part in the crime. We find it impossible to consider the term as abusive, invective or vituperative under the circumstances, and it certainly was not such to arouse passion or prejudice. The trial court has considerable discretion in controlling argument of counsel, State v. Harris, Mo. Sup., 351 S.W.2d 713, and we find no abuse of discretion in this instance. See also State v. Satterfield, Mo.Sup., 336 S.W.2d 509, 515; State v. McCulley, Mo.Sup., 327 S.W.2d 127, 131.

Appellant next asserts that the trial court erred in refusing to give at his request the following requested instruction:

"The Court instructs the jury that a check is a bill of exchange drawn on a bank payable on demand. A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."

■■■ It is with some difficulty that we determine on what theory appellant contends he was entitled to this abstract instruction. He now argues that under the evidence the jury might have believed that he had some part in printing blank forms for checks, but that he took no part in making the actual checks. However, he did not advance this reason to the trial court. If that was the purpose of the instruction, appellant would not have been entitled to one so advising the jury because the theory of the State, as submitted in the instructions, was that appellant had knowingly and intentionally acted in concert with Shoemaker and Adamson in forging the check, and in such event it would not have been a defense that appellant did not personally perform each and every act essential to the commission of the charged offense. Appellant relies principally upon State v. Chaney, Mo.Sup., 349 S.W.2d 238, in which it is held that in certain situations the court is required to give a correct instruction on a

collateral issue when requested even though the offered instruction is erroneous. However, it was expressly held that the court need not rewrite and give an instruction on every proposition on which the defendant offers an incorrect instruction. Appellant says the jury was entitled to know what a "check" really was, but such an instruction would be cautionary in nature and discretionary on the part of the trial court. In the Chaney case at p. 244 it was expressly held that the giving of a cautionary instruction "should require the offer of a correct instruction," and while the requested instruction in this case as worded may correctly state an abstract principle of law it is inappropriate under the facts of this case and under the theory of the State as submitted in the instructions. No prejudicial error resulted in refusing the offered instruction, and under the circumstances there was no duty on the court to give some other instruction relating to the subject matter of the instruction.

■ Appellant asserts that the "court erred in passing sentence, or as it was described, in determining and assessing punishment of defendant, without first granting defendant allocution or asking him whether he had any legal cause to show why such sentence or assessment of punishment should not be pronounced against him." In the argument it is stated that it is "not clear to appellant's counsel" what the differences are, if any, between the "assessment of punishment by a court" and the "judgment and sentence." It is then asserted that appellant's "rights were prejudiced" by the "precipitate action of the court" in determining the punishment without notice, and he was thereby foreclosed from being heard upon the matter.

As previously noted, appellant was tried under the habitual criminal act, and as required by Section 556.280 RSMo 1959, V.A. M.S., evidence of the prior convictions, sentence and subsequent imprisonment was heard by the trial court out of the hearing of the jury prior to the submission of the case to the jury, and the court entered its findings thereon. After the jury returned its verdict of guilty the trial judge, as required by § 556.280(1), determined the punishment. Counsel for appellant then entered an objection "to the court's failure to give allocution to the defendant." We now quote the comment of the trial court then made to appellant's counsel which gives the complete and accurate answer to his trial objection and to his point now made on appeal. "The defendant has not been sentenced. The court is simply at this time assessing the punishment, determining the punishment as the statute requires that I do. And then later on after a motion for new trial has been filed, in the event it is overruled, or if the motion for new trial is not filed, the defendant will be called back in and accorded allocution and judgment and sentence will be pronounced then." The record shows that allocution was had at the proper time and in the proper manner. See Supreme Court Rule 27.09, V.A. M.R. The trial court determined the punishment based on the evidence in the case, and appellant made no request whatever to be heard out of the presence of the jury on the extent of punishment. No error resulted.

■ The last point in appellant's brief is that the court erred in admitting into evidence State's Exhibit No. 1, the forged check upon which the charge was based, and passing the exhibit to the jury because some person had written the word "forgery" on the check. At the court's direction a label had been pasted over the word forgery, but appellant contends that the word could be read through the label. Possibly this is true if a studied effort to do so is made, or if the check is held up to the light. At the time the check was exhibited to the jury the court instructed them "not to make any effort to see anything that is not readily apparent" on the check. In addition, this matter was not mentioned in the motion for new trial. This contention is so totally without merit no further discussion is warranted, and it obviously calls for no action by this court pursuant to Su-

**854**

preme Court Rule 27.20(c), V.A.M.R., as appellant suggests.

The judgment is affirmed, and pursuant to Supreme Court Rule 28.14, V.A.M.R., it is directed that the sentence be executed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.