STATE of Missouri, Respondent,

v.

Joseph LEPKE, Appellant.

No. 45956.

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1957.

F. Neil Aschemeyer, St. Louis, Mark M. Hennelly, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Charged by indictment with the second degree murder of William Nester, the defendant, Joseph Lepke, was convicted of manslaughter and his punishment fixed by the jury at imprisonment in the penitentiary for a term of three years. He has appealed from the ensuing judgment.

The sole contention briefed by the defendant is that the court erred in admitting the testimony of Dr. John J. Connors who stated that he had performed a post-mortem examination upon the body of William Nester on the morning of June 23, 1954. It is said further that the improperly admitted testimony of Dr. Connors constitutes the only direct proof of the cause of Nester's death and hence the State did not fully prove the corpus delicti. A brief statement of facts will be sufficient for an understanding of the question presented.

The defendant offered no evidence. It appears from the State's evidence that the deceased owned a tavern known as the "Brown Jug" and located at 1322 N. Market Street in St. Louis, Missouri. Apparently, he was not working at the tavern on the night in question. Just after midnight on the early morning of June 23, 1954, he came into the tavern alone and spent about ten minutes visiting with some of the patrons that were present. According to Mrs. Mason, who was on duty at the tavern as a waitress, he appeared to have been drinking but was not drunk.

About five minutes after Nester left the Brown Jug Mrs. Mason looked through the west window in the front of the tavern and saw him running east. Very shortly thereafter she heard three shots. Mrs. Mason and others in the tavern ran out the front door and found Nester on the sidewalk, apparently wounded, and Mrs. Mason called the police.

Among the people in the Brown Jug were Billie Joe Knight and James Shartzer. When they came out of the tavern they saw a man (later identified as the defendant) walking eastwardly in the street. He appeared to be intoxicated and had a gun in his right hand. Knight called to the man to come back but he replied, "Get back, or I'll shoot you." Nevertheless, Knight and Shartzer followed defendant to the next corner and when he put the gun in his pocket Shartzer grabbed him and threw him down, at which time Knight kicked him about three times, causing him to become unconscious. Knight then removed the gun from defendant's pocket and he and Shartzer dragged him back to the Brown Jug where they delivered the gun and the defendant to the police.

The police took both Nester and the defendant to a hospital where Nester died a few minutes after arrival. The hospital records in evidence show that deceased had received multiple gunshot wounds and cranial trauma. The records also indicate that an autopsy permit was secured from relatives and the body was released to the coroner.

As heretofore stated, the only point briefed by defendant relates to the testimony of Dr. John J. Connors, chief pathologist in the coroner's office of the City of St. Louis, Missouri. The first ruling complained of appears in the following:

"Q. I will ask you, doctor, whether you had occasion in June of 1954 to perform a post-mortem examination on one William Nester?

"Mr. Hennelly: I object to that for the reason it is hearsay and calls for a conclusion and no proper foundation has been laid for such a question.

"The Court: The objection will be overruled at this time.

"The witness: Yes, sir.

"Mr. Shaw: Q. When did you make that examination, doctor?

"Mr. Hennelly: May the objection which I have heretofore made go to this entire line of questioning?

"The Court: Let the record show your objection to this entire line of questioning. You may answer.

"The witness: Eleven-thirty a. m., June 23, 1954."

The witness then detailed the results of the autopsy which disclosed that a number of bullets had entered the abdominal cavity of the deceased, causing damage particularly to the stomach and liver. He further stated that he removed two bullets from the body which he delivered to Lieutenant Ruff of the police department. He testified that in his opinion the death of Mr. Nester was caused by an internal hemorrhage resulting from the gunshot wounds. At the conclusion of the testimony of this witness defendant moved that all of his testimony be stricken and that a mistrial be declared for substantially the same reasons as stated in the foregoing objection. The objection was overruled and the request for a mistrial denied.

Lieutenant Frank B. Ruff testified as an expert concerning certain ballistics tests he had made with the gun that had been taken from the defendant. According to this witness those tests showed that the two bullets or pellets which Dr. Connors had removed from the body during the autopsy had been fired from the gun in question. He also tested three shell cases that had been found in the area in front of the Brown Jug and stated the opinion that they had been fired in that gun.

No motive appears in the record to explain why the defendant may have shot Nester on the instant occasion. It is admitted that they were good friends. A police officer who questioned defendant a few hours after the occurrence testified that defendant had stated that he and Nester had spent the evening of June 22 together at the Fairmount Race Track and that they had returned to the Brown Jug

about midnight where they went into the tavern and had a couple of drinks. He stated that upon leaving the tavern he was assaulted by two men he had never seen. In regard to the shooting the witness related the following: "I asked him if he recalled shooting Nester and he said that he was drunk; if he did it he didn't remember; that he had been very drunk that night. I asked him if he had a pistol and he denied owning a pistol. * * * He said he did not have a pistol with him that night."

We have concluded that there was ample evidence, both circumstantial and direct, to indicate that William Nester died as a result of the gunshot wounds he received while in front of his tavern on the occasion in question. It is significant that he was apparently in normal health just prior to the shooting and that after the three bullets entered his body he fell to the sidewalk, was unable to speak, and died about thirty minutes thereafter. While conceding that, when necessary, the cause of death may be proved by circumstantial evidence, defendant, relying mainly upon the case of State v. Simler, 350 Mo. 646, 167 S.W.2d 376, contends that such proof must be made by the best evidence available. He states that in the instant case direct proof of the cause of death was available and hence circumstantial evidence will not be considered sufficient.

Defendant admits that the testimony of Dr. Connors, if admissible, is sufficient to supply the direct proof of the cause of death which he contends is required in this case. He states, however, that the evidence concerning the autopsy should not have been admitted because the body upon which the autopsy was performed was not properly identified as the body of William Nester. In this connection it should be noted that Dr. Connors testified unequivocally that he performed the autopsy upon the body of William Nester. The most apparent difficulty with defendant's con-

tention is that he has obviously assumed that Dr. Connors was not personally acquainted with Nester and hence did not have actual knowledge that the body in question was his. We have examined the testimony carefully and find nothing to indicate that the witness did not have personal knowledge as to the identity of the instant body. In that situation it may not be said that the trial court erred in overruling the foregoing objection and motion to strike. In order to afford a proper basis for the objection defendant should have sought permission to ask the witness preliminary questions in an effort to show that the only information possessed by him concerning the identity of the body was based upon hearsay.

■ In addition to the foregoing, there was other evidence which strongly tended to show that the body upon which the autopsy was performed was that of William Nester. As heretofore stated, the two bullets removed from the body by Dr. Connors were shown to have been fired from the gun which had been taken from the defendant and which was shown by other evidence (ballistics tests) to have been fired three times in front of the tavern on the night in question. While that evidence may not be said to be conclusive, it was sufficient to qualify as substantial evidence tending to establish the identity of the body upon which the autopsy was performed. Even if it should be assumed that the rulings complained of were erroneous, the aforesaid evidence thereafter adduced would seem to have supplied the evidence of identification which defendant asserts was an essential requirement for the admission of the testimony.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial or presented in the brief discloses no error. We have concluded that the defendant was afforded a fair trial and that the judgment should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.