**STATE of Missouri, Respondent,**

**v.**

**Joseph Louis BURNETT, Appellant.**

**No. 53077.**

Supreme Court of Missouri,
Division No. 2.

June 10, 1968.

Motion for Rehearing or to Transfer to Court
En Banc Denied July 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, James P. Jouras, Special Asst. Atty. Gen., Kansas City, for respondent.

James E. Cary, Ely & Cary, Hannibal, for appellant.

DONNELLY, Judge.

Appellant, Joseph Louis Burnett, was convicted of uttering a forged check under § 561.011, RSMo 1959, V.A.M.S., by a jury in the Hannibal Court of Common Pleas, at Hannibal, Missouri, and his punishment under the provisions of the Habitual Criminal Act, § 556.280 RSMo 1959, V.A.M.S. (as amended Laws 1959, S.B. 117), was assessed at imprisonment in the custody of the State Department of Corrections for a term of six years. Jurisdiction was in the Hannibal Court of Common Pleas because the offense was alleged to have been committed in Mason Township, County of Marion, Missouri. Section 480.200, RSMo 1959, V.A.M.S. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court. We affirm.

According to the evidence, on February 18, 1966, "between 5:00 and 6:00 o'clock" in the evening, Mrs. Judy Fishback was working as a teller at the Farmers and Merchants Bank. A forged payroll check, on the account of Seither & Cherry Company, and payable to "Charles Dunham," was presented to her by appellant. Appellant endorsed the check and received $177.34 in cash.

Appellant first contends that the trial court erred in connection with testimony and argument which related to money found by a police officer in appellant's home in St. Louis County the morning of February 19, 1966. He asserts that the "search was made without warrant and not incident to a lawful arrest and without other lawful

authority." The search was made by Sergeant Timothy Mahoney of the City of Florissant Police Department. His testimony was, in part, as follows:

"Q. Do you know Joseph Louis Burnett? A. Yes, sir, I do.

"Q. You know him personally?

"A. I have had previous contact with him, yes.

"Q. How long would you say you have known him?

"A. Approximately—from now, or the date of arrest?

"Q. From now. A. Approximately two years.

"Q. Now directing your attention to February 18, 1966, did you have occasion to go to his home on that day?

"A. It was February 19th, 12:15 A.M, when I received the call.

"Q. Just past midnight? A. Yes, sir.

"Q. Why did you go there?

"A. To assist Missouri State Highway Patrol officers in effecting an arrest.

"Q. About what time do you think you arrived there?

"A. Within two minutes, 12:17 at the most.

"Q. Who was there when you arrived?

"A. Sergeant Beck, Trooper Ryan and Trooper Crutchfield.

"Q. All right, how did you get in the house?

"A. I was met at the door by Mr. Burnett.

"Q. Did he invite you in? A. Yes, sir, he did."

*    *    *    *    *    *

"Q. Did you conduct a search of the premises?

"A. Yes, sir, I did.

"Q. Did you ask him, that is, did you ask Mr. Burnett if you could conduct a search of the premises?

"A. Yes, sir, I did.

"Q. What did he say?

"A. He said go ahead, he had nothing to hide, to go ahead.

"Q. In other words, you conducted the search with his permission, right? A. Yes, sir.

*    *    *    *    *    *

"Q. Did you ever advise him that a warrant had been issued for his arrest? A. Yes, sir, I did.

"Q. Did you tell him where the warrant emanated from?

"A. Yes, sir. I advised him that he was to be arrested as a fugitive from the City of Hannibal and there was a warrant on file, to my understanding, for issuing a fraudulent check."

We need not decide (1) whether defendant voluntarily consented to the search (see Annotation, 9 A.L.R.3d 858), or (2) whether, under the conflicting evidence, a warrant had in fact been issued prior to the time the arrest and search were made, because we believe the search was incident to a lawful arrest.

It is "elementary that an officer may make a lawful arrest without a warrant. The general rule is that he may arrest without a warrant any person whom he has reasonable cause to believe has committed a felony * * *." State v. Vollmar, Mo. Sup., 389 S.W.2d 20, 24.

"* * * Police officers are authorized to arrest upon reasonable cause to suspect that one is guilty of a felony, either upon their own knowledge or upon facts 'communicated to them by others * * *.' State v. Brown, Mo., 291 S.W.2d 615;

State v. Green, Mo., 292 S.W.2d 283; State v. Edwards, Mo., 317 S.W.2d 441. If police officers could not thus base the existence of reasonable cause upon bona fide information communicated to them in the performance of their duties, their hands would be very effectively tied." State v. Witt, Mo.Sup., 371 S.W.2d 215, 218, 219.

■ "It is a settled rule in this state that when a defendant has been lawfully arrested a search may be made of his person and of the premises where he was arrested without the necessity of a search warrant." State v. Vollmar, supra, 389 S.W.2d 20, 25. According to the evidence, a felony had been committed. Under the circumstances, Sergeant Mahoney had reasonable cause to believe appellant had committed it. The arrest and search were legal and the trial court did not err.

Appellant next contends that the trial court erred in connection with an alleged admission, because there is no evidence that appellant "had been advised prior to the conversation of his constitutional right to the presence and consultation of counsel."

The evidence in this regard was elicited from Sergeant Mahoney and was as follows:

"Q. Now, did you have any conversation with Mr. Burnett as to whether or not any of this money was his?

"MR. CARY: We object, your Honor, to any conversation that this defendant may have had with this Police Officer because of the grounds, at this point, there is no ascertainment that the defendant could be properly interrogated by this officer outside the hearing or presence of an attorney.

"THE COURT: Overruled.

"A. I did not actually ask the gentleman if the money belonged to him. I assumed it did and he volunteered the information that that was his money. These two sums I mentioned, the one sum I found in the north corner of the house in the one bedroom that was $483.00, and the one sum that I found in the rear bedroom of the house which was $300.00.

"Q. He admitted ownership then of $783.00, is that right?

"A. Yes, sir, that's correct."

Appellant relies upon Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

In Miranda v. State of Arizona, 384 U.S. 436, at 478 and 479, 86 S.Ct. at 1630, the Court stated:

"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to

remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

■ We are of the opinion that the admission in question was volunteered by appellant. Further, the record made on the motion to suppress, at which appellant testified, shows that the admission was not "obtained as a result of interrogation." Sergeant Robert E. Beck, of the Missouri State Highway Patrol, who was present at appellant's home with Sergeant Mahoney, testified as follows:

"Q. To your knowledge was there a lengthy interrogation of him either at his home, at the Florissant City Police Department, or at Troop C Headquarters?

"A. There was no interrogation at any of those places.

"Q. Did you ever attempt to interrogate him?

"A. No, sir.

Appellant asserts that the "confrontation of the money was * * * an interrogation, albeit a silent 'interrogation', of appellant." We do not agree. The law announced in Miranda and Escobedo does not assist appellant. The point is without merit.

Appellant contends he was deprived of his right to bail in violation of S.Ct. Rules 21.13 and 21.14, V.A.M.R., and that, because he was denied bail, he was "forced to confront his several accusers at a time and under circumstances when the question of his guilt was so heavily weighed against him, and under conditions that were so unnecessarily suggestive and conducive to irreparable mistaken identification, that he was denied the due process of law under the Fourteenth Amendment of the United States Constitution."

According to the evidence, appellant was arrested in St. Louis County sometime between 11:00 P.M., February 18, 1966, and 12:17 A.M., February 19, 1966. A warrant for his arrest was issued by the Magistrate Judge of Marion County, Missouri, "shortly after midnight." Appellant was taken to the Florissant City Police Department, then to Troop C Headquarters of the State Highway Patrol at Kirkwood, then to Bowling Green, and then to Hannibal. According to appellant, he arrived at Bowling Green "at 4:00 o'clock in the morning" on February 19, 1966, and was confronted by "his several accusers" "between 4 and 5:00 A.M. in the morning."

In Harbison v. Chicago, R.I. & P. Ry. Co., 327 Mo. 440, 452, 37 S.W.2d 609, 614, this Court stated: "* * * It might be well to say in passing, that we do not hold that every time an officer makes an arrest it is his duty to immediately take the prisoner before the proper officer for the purpose of giving bond, regardless of the circumstances surrounding the arrest. The time of day or night the arrest is made, the condition of the prisoner, his ability and readiness to give a sufficient bond, and other circumstances not necessary to mention here, are all determinative factors. Each individual case must stand on its own facts."

■ Under the facts and circumstances in this case, we believe the conduct of the arresting officers was reasonable. We hold that rules 21.13 and 21.14, supra, were not violated, and that appellant was not unlawfully deprived of his right to bail.

■ Further, we find no merit in appellant's contention that he was unlawfully "forced to confront his several accusers." See State v. DePoortere, Mo.Sup., 303 S.W.2d 920, 924, 925. The law announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, pertaining to confrontation for identification purposes, is not applicable. The confrontations were conducted prior to June 12, 1967. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; State v. Blevins, Mo.Sup., 421 S.W.2d 263; State v. Williams, Mo. Sup., 423 S.W.2d 736; and State v. Keeney, Mo.Sup., 425 S.W.2d 85.

■ Appellant contends the trial court erred in admitting evidence of certain other transactions, because of the general rule that proof of the commission of separate and distinct crimes is inadmissible.

According to the evidence, appellant victimized three other persons in Hannibal the evening of February 18, 1966. He endorsed and passed to Frank Bastian a forged check, made to "Charles Dunham," in the amount of $177.34. He endorsed and passed to Mary Hawker a forged check, made to "Charles Dunham," in the amount of $177.34. He endorsed and passed to Alfred L. Green a forged check, made to "Jerry M. Pursley," in the amount of $179.-64.

In State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765 at 768, this Court said: "Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof."

The language used in State v. Adamson, Mo.Sup., 346 S.W.2d 85, at 88, is appropriate here: "It would be difficult to conceive of a better example of a 'common scheme' than was shown here in the preparation and passing of these various checks. Evidence of the integral parts of the scheme were admissible to prove elements of the State's case, not the least of which was an 'intent to defraud' in the words of § 561.011." Appellant's assignment of error is without merit.

Appellant contends that the trial court erred in admitting, over his objection, the following testimony elicited from witness Terry Richard Skinner:

"Q. Now Terry, directing your attention to February 18, 1966, at about 6:30 P.M. do you recall where you were?

"A. Yes, sir, I was working at Phillips Conoco Station at 2800 St. Marys Avenue.

\* \* \* \* \* \*

"Q. All right. Let me ask you this, Terry, have you ever seen this defendant before? A. Yes, sir.

"MR. CARY: We object again, your Honor, this is leading.

"THE COURT: Overruled. The Court doesn't know what the defendant's defense is because we don't have pleadings in criminal cases of this kind, and this might be important. The objection will be overruled.

"A. Yes, sir, I have.

"Q. Where did you see him?

"A. He was in the station the same night at the same time.

"Q. The night I mentioned? A. Yes, sir.

"Q. Do you recall what kind of a car he was driving, or if he was driving a car?

"A. He was driving a powder blue Ford Thunderbird, late model.

"MR. CARY: Well, your Honor, we object to this testimony as being immaterial to this case, and has no relevancy whatsoever to the cause now at issue.

"THE COURT: Overruled."

In State v. Knight, 356 Mo. 1233, 206 S.W.2d 330, at 333, this Court said: "It is a basic rule of evidence that if testimony is logically relevant it should be admitted, unless forbidden by some of the exclusionary rules. On the other hand, evidence which is irrelevant, upon proper objection, should be excluded. Vol. 2, Jones Commentaries on Evidence, 2d Ed., § 587, pp. 1083, 1084; Vol. 1, Wigmore on Evidence, 3rd Ed. §§ 9, 10, p. 289 et seq.; 31 C.J.S. Evidence § 158; Godsy v. Thompson, 352 Mo. 681, 179 S.W.2d 44. 'Generally, it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, affords reasonable inferences upon the matter in issue, tends to prove or disprove a material or controlling issue or to defeat the rights asserted by one or the other of the parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue is relevant and admissible.' 20 Am.Jur., Evidence, § 247; and Vol. 2, Jones Commentaries on Evidence, 2d Ed., § 590, pp. 1089–1091."

We believe that Skinner's testimony, showing appellant, a resident of St. Louis County, present in Hannibal at 6:30 P.M. on February 18, 1966, and describing the type of car he was driving, was relevant to the issues in the case.

Appellant further complains of the admission of the following testimony elicited from Sergeant Mahoney:

"Q. Do you know what kind of a car Mr. Burnett owned at that time?

"MR. CARY: We object to that, your Honor.

"THE COURT: Overruled.

"A. Yes, sir.

"Q. What kind was it?

"A. A late model T-Bird. It was light blue, two door.

"Q. Light blue? A. Yes, sir."

Appellant concedes the insufficiency of the objection made but asks that we invoke the "plain error rule" under S.Ct. Rule 27.20(c), V.A.M.R. We decline to do so. The testimony does not represent the "best evidence" of the fact of ownership. However, we do not believe that "manifest injustice or miscarriage of justice" has resulted from the admission of the evidence.

Appellant finally asserts that the trial court erred in failing to declare a mistrial and to discharge the jury during the closing argument on the part of the State. In the closing argument by Mr. McKenzie, the prosecuting attorney, the following occurred:

"I am going to ask you to render the sort of decision that will serve as a warning to any one who seeks to come to our community to victimize our people.

"MR. CARY: Your Honor, we object to this inflammatory comment, and we ask at this time that the jury be discharged, that is an entirely improper comment.

"THE COURT: The motion will be denied.

"MR. McKENZIE: I am asking you to tell, by your decision, the hoodlums in St. Louis County—

"MR. CARY: We object again, your Honor, and ask that—

"THE COURT: (Interrupting) Yes, sustained as to that, and that last statement will be stricken.

"MR. CARY: And we ask that the jury be discharged at this time, that's—

"THE COURT: Motion denied.

"MR. McKENZIE: I am asking you to tell the gentlemen who come to this area from St. Louis County—

"MR. CARY: Your Honor, you just sustained an objection—

"THE COURT: No, that was a different statement.

"MR. McKENZIE: —that we won't tolerate this sort of activity.

"MR. CARY: Your Honor, I'm sorry —may we approach the bench?

"THE COURT: Well, make your objection there, just make your objection, I'll rule on it.

"MR. CARY: I object to the inflammatory comment that the Prosecutor has made in his argument. It is highly prejudicial to the defendant. There's certainly no evidence in the record that this man is a hoodlum, or anything else.

"THE COURT: Well, the Court has already ruled on that part but the Court will sustain your objection now. Let's stay within the record."

■ We are of the opinion that the trial court did not err in overruling appellant's objection to the "warning" portion of the argument. In State v. Evans, Mo.Sup., 406 S.W.2d 612, at 616 and 617, this Court said: "The necessity of law enforcement as a deterrent to crime, * * * the evil results which flow to society from a failure of the jury to do its duty, * * * and the responsibility of trial juries in the suppression of crime, * * * are legitimate arguments, as long as the prosecutor stays within the record and the reasonable inferences to be drawn therefrom, * * *

and does not make an inflammatory appeal so as to arouse the personal hostility of the jurors toward defendant, such as implanting in their minds the fear that defendant's acquittal will endanger their own personal safety or that of some member of their families." The rules set forth in the Evans case were not violated.

■ Appellant complains of the use of the word "hoodlum" by the prosecuting attorney. In State v. Stroud, 362 Mo. 124, 128, 240 S.W.2d 111, 113, this Court said: "Defendant next complains that the circuit attorney in his argument referred to defendant as a 'hoodlum.' His only use of this word was as follows. 'Unfortunately, the way housing is, a lot of good people— good colored people, have to live around close to a lot of hoodlums. So they all knew each other, he knew her because she was attractive.' The defendant is correct in his contention that a prosecutor should not be allowed to apply unbecoming names to a defendant. State v. Taylor, 320 Mo. 417, 8 S.W.2d 29. Even if we assume that the above was considered as a reference to defendant as a 'hoodlum,' the error was cured, as the trial court sustained defendant's objection, the statement was stricken from the record, and the jury instructed to disregard it. State v. King, 342 Mo. 975, 119 S.W.2d 277." The trial court sustained the objection, ordered the statement stricken from the record, and instructed the prosecuting attorney to "stay within the record." Appellant's assignment of prejudicial error is without merit.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error. The judgment is affirmed.

All of the Judges concur.