**STATE of Missouri, Respondent,**

v.

**Charles Wayne O'NEAL, Appellant.**

No. 53243.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1968.

Motion for Rehearing or to Transfer to Court
En Banc Denied Dec. 31, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, F. Daley Abels, Special Asst. Atty. Gen., St. Louis, for respondent.

Van Matre & Van Matre, Mexico, for appellant.

J. DORR EWING, Special Judge.

This is an appeal by Charles Wayne O'Neal, who was charged with murder in the first degree, for the killing of his wife, Wanda O'Neal. He was tried in the Circuit Court of Audrain County and convicted by a jury of murder in the second degree, and his punishment assessed at ten years' imprisonment.

Appellant was ably represented at his trial, and in this appeal, by counsel of his own choosing.

The appellant first asserts that the Court erred in admitting into evidence a statement made by the defendant "at the scene," admittedly without any "Miranda" warning.

"The Missouri practice contemplates a preliminary or voir dire examination to determine the competency of a confession before it is presented to the jury." State v. Washington, Mo.Sup., 399 S.W.2d 109, 114.

The Court properly, out of the hearing of the jury, conducted a hearing to determine whether or not the statement sought to be introduced into evidence was admissible.

The Court having made a determination that the statement was a voluntary statement of the defendant, we must review the evidence and determine whether there was substantial, credible evidence upon which to base such finding.

Second, defendant asserts error in the refusal to admit testimony offered by defendant showing defendant had stated some twelve hours to two days after these events, when he was in a hospital, that deceased had either shot herself or her shooting accidentally resulted when defendant tried to take the revolver from her.

Third, defendant contends the evidence, being circumstantial, was not sufficient to show the defendant did intentionally kill his wife. Accordingly, we must set forth the evidence relating to this issue in some detail.

Finally, defendant asserts that one juror, while the jury was by agreement permitted to separate after the State had withdrawn its right to ask the death penalty, was guilty of such misconduct as to deprive him of his right to a fair trial.

Defendant came to spend his leave from military service with his wife and four children at their four-room, one-story home in Mexico, Missouri. Not having found his wife at home with the children when he tried to telephone her and finding the children without a grown person with them and being unable to locate his wife until her return at five to six A.M., there was later difficulty between them. Their home had two bedrooms, a bath, a living room and a kitchen.

Defendant left home about 8:30 or 9:00 the night of September 24, 1966, and spent the evening at taverns visiting friends and drinking beer, returning home about 1:00 A.M. The wife, fully clothed, had gone to bed with the children in the children's bedroom. Arriving, defendant woke his wife and demanded that she return to their own bed. This she did. The children, having been awakened, heard some loud talk and then heard defendant call his wife vile and vulgar names. Shortly thereafter, the children heard a loud noise, a gunshot.

Immediately the children went into the parents' bedroom and saw their mother lying on the bed with her head all bloody, and defendant was embracing her. Defendant and deceased were the only persons in the bedroom at the time of the gunshot, and the wife was dead upon arrival of the officers. Defendant directed his children to call police and an ambulance.

Within a few minutes, Police Officer Poland arrived at the home, having been advised there had been a shooting but not the identity of the victim or the name of any suspect. Defendant was lying on the floor of the living room covered with blood when the officer arrived. Poland asked defendant, "What has happened?" to which defendant made no reply. Nina, the thir-

teen-year-old daughter, replied, "It's not him; it's mom."

No further questions were asked, except other officers arriving might have asked a similar question but received no response.

The officer went on into the bedroom and found Wanda O'Neal lying on the bed, with a bullet hole about an inch below her eye and already dead. The officer then returned to his car and called for the coroner and an ambulance. Upon returning to this room he observed a 38 caliber pistol, property of defendant, lying beside the body, covered with blood.

It was shown the defendant made trips to wash his wife's face, to the bathroom, and some ten or fifteen minutes after Officer Poland first arrived, as he was facing away from any officers, and returning to the bedroom, and without any question being asked him by anyone, defendant said, "She's dead, I know she's dead, I shot her," and a few seconds later added, "Zip her up in a black rubber bag and ship her out. That's the way we do overseas."

The officers, re-examining the body of Wanda, found not only the bullet hole below her eye but found a hole in the back of her head with blood, bone and brain tissue pushed out.

Defendant took the stand and testified that after the argument in the bedroom he obtained his revolver from the dresser drawer and threatened to kill himself. He said his wife told him he wouldn't, and while he had his back turned said, "If you won't, I will," and when he turned she had the revolver in her hand and he made a lunge to grab it and she was shot. Defendant sought to prove that at the hospital some twelve hours to two days after this shooting, defendant told the same story that he did at the trial. This offer was refused.

Defendant cites Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974; and State v. Beasley, Mo.Sup., 404 S.W.2d 689, for support of his claim that his statement, made to officers a few minutes after their arrival, was improperly admitted. In Miranda, 86 S.Ct. 1602, l. c. 1629, the Court said: "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. * * * *Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.*" (Italics ours.)

■ We hold that the evidence before the Court was abundantly adequate to show beyond a reasonable doubt that the statement of defendant was a voluntary statement made by defendant, spontaneously made at the scene, while not in custody, and at a time when he had not been and was not being interrogated by the police or anyone else. The trial court properly held this to be a voluntary statement which was admissible. See State v. Peck, Mo. Sup., 429 S.W.2d 247, 251; State v. Burnett, Mo.Sup., 429 S.W.2d 239.

The statement being properly admitted, it follows the Court did not err in refusing to declare a mistrial for the wrongful admission of such statement.

Defendant's second contention is that he was deprived of his right to a fair trial when the Court refused the offer of evidence to prove that at times from twelve hours to two days after the shooting he made statements to the physician and personnel at the hospital telling the events as he told them when he testified in his own behalf.

We are cited the case of State v. Bridges, Mo.Sup., 349 S.W.2d 214 as so holding. In that case the State, not the defendant, sought to show the statement being offered as proof of defendant's guilt. In State v. Perkins, Mo.Sup., 92 S.W.2d 634, cited by appellant, the Court laid down the rule, l. c. 638:

"The law is well settled that a defendant in a criminal case will not be permitted to

make evidence for himself by adducing his self-serving declarations (when not a part of the res gestae) explaining his motives, designs, etc."

■ It is generally held a litigant cannot found his case upon statements he makes with reference to the facts when not a part of the res gestae. We so hold. See State v. Brown, Mo.Sup., 312 S.W.2d 818, 822; State v. Durham, Mo.Sup., 418 S.W.2d 23, 28; State v. Gooch, Mo.Sup., 420 S.W.2d 283, 288.

The burden is upon the person offering the evidence to show the necessary state of facts to entitle the same to admission. Thus, the burden was upon defendant to show his hearsay statements were made under such circumstances as to assure the truth.

■ Many cases have dealt with the question of whether statements under differing circumstances were or were not part of the res gestae so as to be admissible.

In State v. Stallings, 334 Mo. 1, 64 S.W.2d 643, 645, it quoted with approval the opinion in Stewart v. Commonwealth, 235 Ky. 670, 32 S.W.2d 29, 1. c. 32: "The exclamation must be the act of talking for itself, not the person talking about the act. It must be the apparently spontaneous result of the occurrence operating upon the perceptive senses of the speaker * * * rather than the result of reasoning from collateral facts."

The nearness to the event need not necessarily be in point of time as in some cases declarant is by the event rendered unconscious and the statement in issue made immediately after he revived consciousness.

■ Defendant, following the event, was conscious, given a sedative at his home and taken to the hospital about one-half hour later, and some twelve hours later talked to the doctors and hospital personnel and told them what had happened. There was no showing when defendant aroused from his sleep or when the effects of this sedative ceased. The evidence offered was not a spontaneous statement made during stress; was not in the presence of the place or objects; was not contemporaneous with event; was not close in time; and the event and the statement do not form one continuous transaction.

The Court properly found defendant's self-serving statements made to hospital personnel and copied into the hospital records were not admissible as part of the res gestae. State v. Lovelace, Mo.Sup., 39 S.W.2d 533, 534; Gough v. General Box Company, Mo.Sup., 302 S.W.2d 884, 889; VI Wigmore on Evidence, 3d Ed., Pars. 1747, 1750.

Defendant contends that there was not sufficient proof adduced at the trial to show the corpus delicti. There was no evidence by any physician as to the cause of death.

■ It is true that, "In murder, the corpus delicti consists of two elements: (1) The death of the person alleged to have been murdered, and (2) the criminal agency of someone other than deceased causing the death." State v McQuinn, 361 Mo. 631, 235 S.W.2d 396, 397.

The fact of the death of Wanda O'Neal was established not only by a police officer who examined her body and testified to finding no pulse and no light reaction in her eyes, but the defendant, taking the stand in his own behalf, when asked about the gun gave evidence as follows:

"Q When did you do that?

"A *Once I knew she was dead, Sir, I knew she was gone.*

The defendant argues that there being no expert witness, physician or otherwise, who testified the bullet wound was the cause of death, the evidence in this respect is not sufficient to support a conviction.

■ The evidence showed deceased carrying on her usual duties as a housewife and mother, the violent quarreling between

defendant and deceased immediately preceding the event, the two alone in the room together, the sound of the gunshot, and the children immediately thereafter going into the bedroom and seeing deceased lying on the bed in a pool of blood, a few minutes later police arrive and find the lifeless body, with a revolver owned by defendant with one spent shell lying by her body, and the defendant ten to fifteen minutes after exclaiming, "I know she's dead, I killed her."

It is well established that full proof of the corpus delicti independent of defendant's confession is not required. State v. McQuinn, 361 Mo. 631, 235 S.W.2d 396, 397.

In State v. Skibiski, 245 Mo. 459, 150 S.W. 1038, 1039, it is said: "If there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved * * *."

■ We have concluded the evidence submitted to the jury is ample to prove the death of Wanda O'Neal was as a result of the gunshot wound and that the defendant was guilty of murder. State v. Smith, Mo. Sup., 384 S.W.2d 516, 517; State v. Lepke, Mo.Sup., 305 S.W.2d 432, 434.

■ The cause of death, like any other circumstance, may be proven and was proven by circumstantial evidence. State v. Tettamble, Mo.Sup., 431 S.W.2d 441, 443.

In reviewing evidence of similar character and where a similar contention was made in State v. Gregg, Mo.Sup., 399 S.W. 2d 7, the Court said at l. c. 10: "Defendant's presence at * * * the shooting and the evidence * * * that the fatal shot came from defendant's gun, when considered in connection with [the] defendant's statements that he shot deceased * * would reasonably support a finding that [the] defendant intentionally shot deceased with the rifle."

Here the evidence is sufficient to show the defendant intentionally killed deceased with a deadly weapon. We rule that the evidence was sufficient to make a submissible case of murder in the second degree.

■ Lastly, defendant asserts that he was, by reason of the misconduct of a juror, deprived of his right to a fair and impartial trial. During the course of the trial, the State withdrew its right to ask the death penalty and at the same time the defendant and the State agreed the jury could separate during the trial. The Court gave a very detailed and proper admonition of the duty of each juror to keep away from any outside matters which might influence them. After this admonition, a juror (not the juror whose conduct is in question) asked if it was permissible for him to go out for the evening to a public eating place to celebrate his wife's birthday. The Court stated he saw nothing improper, but if anyone mentioned the case or any fact or circumstance, to walk away, and adding, apparently to counsel, "Do you gentlemen feel there is anything wrong with that?"

To this question and to this permissible conduct, defendant made no objection.

Juror Brewer, at the evening recess, with his wife went with another couple related to them to celebrate such other couple's Wedding Anniversary. They called during the course of the evening at several places where food and beer were sold and at a dance hall, drinking some beer, dancing and playing shuffleboard. At a tavern where a considerable and rather noisy crowd was gathered, a woman related to deceased asked what the juror was "doing out" and after this was explained she questioned the juror as to what he thought about the death penalty. Such juror advised he was not permitted to and would not talk to her. She then went to where the juror's wife was and persisted in asking questions of her; and after the juror came

over and to avoid this action started for their home, when outside the building, this woman, after cursing, assaulted her. The juror came to his wife's rescue, put his hand on such person and his wife and requested them to cease. Then the juror was knocked down, by this woman's husband. There was nothing further.

It is proper in cases, not capital, that the jury be permitted by consent of the parties, to separate. Section 546.230 RSMo 1959, V.A.M.S. State v. McVey, Mo.Sup., 66 S.W.2d 857.

"The reason and purpose of the rule [against the separation by a jury during the trial] is to prevent the jurors from being subjected to any * * * [outside] influences * * *." State v. Daegele, Mo. Sup., 302 S.W.2d 20, 25.

The jurors, without objection by defendant, were told it was not improper for them to go to dinner at a public place. The juror, being at a tavern, acted with proper restraint. The record shows no misconduct on the part of the juror. The incident was immediately reported. The Court heard during the trial and fully in connection with defendant's Motion for New Trial the evidence concerning such matter.

A declaration of mistrial rests largely in the discretion of the trial court who was in a better position than the Appellate Court to evaluate whether the incident had any prejudicial effect. State v. Nolan, Mo. Sup., 423 S.W.2d 815.

It was well said in State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 123: "The mere possibility that something prejudicial could have happened, of which there is no proof, is insufficient to require a new trial, * *."

We think the record sustains the Court's findings and the juror was not subjected to improper influence.

We have examined the entire record and find no reversible error. Appellant had a fair trial. He was ably represented in the trial and on appeal. The judgment is affirmed.

DONNELLY, Acting P. J., and EAGER, J., concur.

FINCH, P. J., not sitting.