STATE of Missouri, Plaintiff–Respondent,

v.

**Jerry SPEARS, Defendant–Appellant.**

No. 18837.

Missouri Court of Appeals,
Southern District,
Division Two.

May 16, 1994.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., for plaintiff-respondent.

1. All references to statutes are to RSMo 1986.

GARRISON, Judge.

After having waived his right to a jury trial, Defendant was convicted by the trial court of murder in the first degree, § 565.-020,[1] and armed criminal action, § 571.015. He was sentenced to life imprisonment without the possibility of parole for the murder conviction, and thirty years for armed criminal action, with the sentences to run concurrently. On this appeal, Defendant challenges the sufficiency of the evidence to support the finding that he killed the victim after deliberation. We affirm.

In determining the sufficiency of the evidence in this court-tried case, we apply the same standard which is applicable in jury cases. *State v. Harris*, 774 S.W.2d 487, 491 (Mo.App.1989). Therefore, we accept as true all evidence and reasonable inferences that support the judgment and disregard all contrary evidence and inferences. *Id.* We are not to weigh the evidence but review the record only to determine whether there was sufficient evidence from which the trier of fact could reasonably have found defendant guilty. *Id.* The evidence need not be conclusive of guilt, nor need it demonstrate the impossibility of innocence. *State v. Bounds*, 857 S.W.2d 474, 476 (Mo.App.1993).

Much of the evidence supporting the conviction comes from a statement introduced at trial which was given by Defendant shortly after he was arrested by the highway patrol in Colorado two days after the victim was killed. The evidence, viewed in the light most favorable to the conviction, may be summarized as follows: The victim, Ruby Spears, was Defendant's paternal grandmother with whom he and his wife had been living in Deering, Missouri. On September 18, 1991, after having eaten dinner and watched television together, Defendant's wife went to bed in a separate room. After she retired, the victim and Defendant had a conversation during which she told him he should return to Louisville where he had previously lived, saying "you know you don't have anything here, you're just going to end up in trouble," and she further told him that his wife was a "slut." According to Defen-

dant, that made him mad and "I just said grandma that's fine if you think she's a slut" and "I'm going to bed I'll see you in the morning." Again, drawing from his statement, he said, "In the past my grandmother was nothing too special to me. She never did treat me like you know a normal grandmother would treat a normal grandson. She always treated me bad and when she called my wife a slut it just set me off."

He then went to the bedroom where he had a conversation with his wife. According to his account, he told his wife what he was going to do but she said "she didn't want to have any part of it," and "wanted to stay in her room until it was over and when it was over just leave." Five to ten minutes later, Defendant went to the kitchen, took a knife from a kitchen drawer, hid it behind his back, and called his grandmother into the room. When she arrived, he reached around and stabbed her in the back of the neck "as many times as I could." The victim, however, got up and went toward a door to leave the house but didn't quite get there. Instead she got to a cabinet by the door where she retrieved a screwdriver and hammer. When she came toward Defendant, he took a barstool and "hit her with it a few times until the screwdriver and hammer fell out of her hands." He then took the screwdriver and "stuck it through the front of her neck." She got up and came at him again, however, at which time he took the hammer and "hit her as many times as I could," causing her to fall. When he heard the victim "still mumbling something," he retrieved a can of WD–40 from under the sink and, using his lighter, made a blow torch out of it and "burned her until she died."

■■■ In order to sustain a conviction of murder in the first degree, the evidence must be sufficient to support a finding that the defendant "knowingly cause[d] the death of another person after deliberation upon the matter." § 565.020.1. Deliberation is defined as "cool reflection for any length of time no matter how brief." § 565.002(3). To satisfy the requirement of "deliberation," it is sufficient to show that defendant merely considered taking another's life in a deliberate state of mind. *State v. Roe*, 845 S.W.2d 601,

607 (Mo.App.1992). Deliberation is usually inferred from the circumstances surrounding the death and can be inferred from evidence of multiple wounds. *State v. Barnes*, 740 S.W.2d 340, 344 (Mo.App.1987).

■■■ In the instant case, Defendant's own account of his grandmother's death provided more than sufficient evidence to support a finding that he killed her after deliberation. He formed an intent to kill her which he discussed with his wife, who reminded him of the wrongfulness of his plan by indicating that she did not want to be any part of it. He executed his plan by calling the victim into the kitchen, retrieving the knife from the drawer, hiding it behind his back, and reaching around and stabbing her in the back of the neck several times. He also used a variety of weapons, including a knife, screwdriver, hammer, bar stool, and a self-fashioned blow torch.

In arguing that there was insufficient evidence of deliberation, Defendant points to the fact that a psychologist testified that he had an explosive and borderline personality disorder with psychotic symptoms; that his ability to reflect had been truncated in his childhood; and that at the time of the crime his ability to appreciate the nature or wrongfulness of his conduct was impaired. He also argues that a psychologist employed by the State testified that he was impulsive, had difficulty controlling his anger, and had an anti-social personality disorder. The witness further testified that simply because he had that disorder did not mean he could not deliberate, but rather, it meant a lot of times people with that condition do not deliberate because they are impulsive.

Defendant seems to argue that because of the testimony of the two psychologists, the trial court was required to find that the necessary element of deliberation was missing. We are not to reweigh the evidence, but merely determine if there was sufficient evidence from which the trier of fact could have found defendant guilty. *State v. Roe*, 845 S.W.2d at 606. Under these principles and the applicable standard of review, we conclude that there was sufficient evidence of deliberation to support Defendant's convic-

tion of murder in the first degree. There-
fore, the judgment is affirmed.

FLANIGAN, P.J., and CROW, J., concur.