STATE of Missouri, Plaintiff–
Respondent,

v.

Michael JANSON, Defendant–Appellant.

No. 21731.

Missouri Court of Appeals,
Southern District,
Division One.

March 26, 1998.

Susan K. Eckles, Asst. Public Defender, St. Louis, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Plaintiff–Respondent.

PREWITT, Judge.

Defendant appeals following his conviction after non-jury trial. He was convicted of attempting to manufacture methamphetamine in violation of Section 195.211, RSMo 1994. In his first point relied on, Appellant asserts that the evidence was insufficient to support the verdict in that the State failed to prove actual or constructive possession of chemicals and drug paraphernalia used in the manufacture of methamphetamine on which the conviction was based.

On December 15, 1996, Deputy Fowler of the Stoddard County Sheriff's Office attempted to arrest Defendant at Bolin's Garage in Puxico. The garage was operated by Jiminy Bolin. James Bolin, Jiminy's father and Defendant's uncle, resides in a trailer next to the garage. He let Deputy Fowler into the garage to search for Defendant. Defendant was not present. Later in the day, the deputy received information that Appellant was at Bolin's Garage and returned to attempt to arrest him. Fowler was accompanied by other law enforcement officers and arrived at the garage at approximately 6:00 p.m. The garage, parking lot, and surrounding area appeared just as it had earlier that day, except that there was a pick-up truck parked in the lot to the east of the garage. Its engine was running. The building was not locked, as the lock had been broken for several months.

When Deputy Fowler walked toward the entrance of the garage, the door opened and Defendant walked out. Fowler informed Defendant that he was under arrest, and ordered him to the ground. Defendant complied with the request. Two other deputies discovered a gun in a holster worn under Defendant's coat. Fowler saw two other men standing inside the garage, and saw one of them toss an object into a truck body in the garage. Fowler then ordered these individuals, Barry Condict and Mark McClain, to the floor while he checked the truck body. There he found a loaded 9 mm automatic pistol.

A deputy then entered the office area of the garage to see if anyone else was there. The lights in the office were not on, and the deputy used his flashlight to see inside a closet within the office. The doors to the office and the closet were both open. Inside the closet the deputy saw an open, unzipped blue vinyl bag, which contained jars and coffee filters. The bag also revealed other items consistent with methamphetamine lab equipment. Upon discovery of these items, Fowler arrested Condict and McClain for attempting to manufacture methamphetamine. Defendant, who remained outside and on the ground, was also arrested and charged with attempt to manufacture methamphetamine.

No one was authorized to be in the garage on the date of the arrests, as the garage was closed. It was common, however, for customers to frequently come by the garage as late as 10:00 p.m., and on weekends. Condict had previously been a customer of the garage. Where Condict and McClain were seen inside the garage was an area in which the public was permitted, and the office where the paraphernalia was found was a private office not normally open to customers. The operator of the garage, Jiminy Bolin, did not know the bag was in the closet on the date of Defendant's arrest. The owner of the garage, James Bolin, testified that he had never stored such a bag in the closet, and the operator testified that he did not own such a bag, nor had he seen anyone place a bag in the closet. Jiminy Bolin also testified that there were "people in and out of there

all the time," and that the bag "could have been left there at any time."

At arraignment, Defendant pled not guilty and waived his right to a jury trial and his right to testify. The case was submitted by stipulation to the trial court on evidence consisting of a video tape of the contents of the blue vinyl bag, the crime lab report, and the transcript of the preliminary hearing. On April 2, 1997, the trial court found Defendant and his two co-defendants guilty of attempting to manufacture methamphetamine. Defendant was released on a bond pending sentencing, originally scheduled for May 21, 1997. Appellant did not appear for sentencing and a capias warrant was issued. On June 4, 1997, Appellant appeared in court and was sentenced to 12 years in the Missouri Department of Corrections.

Before reviewing the merits of this appeal, we first address the potential application of the escape rule. "The escape rule operates to deny the right of appeal to a defendant who escapes justice" after a conviction. *State v. Troupe,* 891 S.W.2d 808, 809 (Mo.banc 1995). The verdict in this case was rendered on April 2, 1997, and sentencing was set for May 21, 1997. Defendant did not appear at sentencing, and was later arrested and returned to Stoddard County for sentencing on June 4, 1997. Thus, fifteen days elapsed between Defendant's original sentencing date and the date when he actually did appear for sentencing.

The "relevant inquiry" into whether to apply the escape rule is whether the escape "adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal." *Troupe,* 891 S.W.2d at 811.

In this case, Defendant's escape did not substantially hinder the justice system because only the sentencing hearing needed to be re-scheduled, and Defendant's whereabouts were unknown to the court for only fifteen days. Additionally, the record in this case does not reflect that Defendant posed a danger to society, or that he harmed anyone during his escape. Under these circumstances, the escape rule should not bar this appeal.

We turn now to the issue of sufficiency of the evidence to convict Defendant. Following a non-jury trial, an appellate court applies the same standard which is applicable in jury cases, and accepts as true all evidence and reasonable inferences that support the judgment and disregards all contrary evidence and inferences. *State v. Spears,* 876 S.W.2d 33, 34 (Mo.App.1994). We do not weigh the evidence, but determine only whether there was sufficient evidence from which the circuit court could have reasonably found Defendant guilty. *Id.*

Defendant's point relied on states that there was insufficient evidence to support a conviction in this case, in particular with regard to actual or constructive possession of the items in the bag. At issue is whether the State's evidence, together with all reasonable inferences, proved that Appellant actually or constructively possessed its contents. In *State v. Condict,* 952 S.W.2d 784 (Mo.App.1997), Barry Condict, who was in the garage when Defendant was arrested, was ordered discharged as the evidence was insufficient to convict him of the same charge. There the standard for possession was stated as follows:

> To sustain a conviction for possession of a controlled substance, the State must prove that the defendant knowingly and intentionally possessed the proscribed substance. [citation omitted] If actual possession is not present, constructive possession of the drugs will satisfy this burden if other facts exist which buttress the inference of defendant's knowledge of the presence of the controlled substance. Exclusive control of the premises where the drugs are found raises an inference of possession and control. However, where only joint control of the premises is present, some further evidence is needed to connect the defendant with the drugs.

952 S.W.2d at 786. The mere presence of the accused on the shared premises where the drugs are found does not suffice to convict for possession. *See State v. Wiley,* 522 S.W.2d 281, 292 (Mo.banc 1975).

The evidence in this case established that the premises was generally open to the public and not under the exclusive control of

the Defendant. No fingerprints were taken from the blue vinyl bag, and no controlled substances were found on the person of Defendant. Actual possession was not established, and the evidence does not support constructive possession. As recited above, the garage in which the methamphetamine lab equipment was found was a commercial establishment and Defendant did not control the premises. Defendant was not an owner, manager, or employee of the business. At the time the methamphetamine lab equipment was seized, Defendant was outside the building. Defendant was merely present at a location where a controlled substance and related items were found.

■ The State did not present sufficient evidence to establish that Defendant had knowledge or control of such items. The State attempts to distinguish *Condict* because Defendant possessed a weapon and his uncle owned the garage. Because Defendant's uncle owned the garage and Defendant possessed a firearm does not lead to a reasonable conclusion that Defendant possessed the items, nor that he controlled the premises. There are numerous reasons why Defendant may have carried a pistol. Many people have such weapons and do not possess or manufacture illegal substances. Such evidence may be relevant when combined with other evidence indicating possession or control, but is insufficient by itself. Being related to the owner of a building does not establish or even strongly indicate control of it. We conclude that the State failed to establish sufficient evidence from which the trial court could have reasonably found Defendant guilty.

As the State had an opportunity to fully develop its case, we do not remand for a new trial. *See Condict*, 952 S.W.2d at 787. The judgment of the conviction is reversed and the case remanded with instructions that the trial court enter a judgment of acquittal and order Defendant discharged from any penalty based on the charge herein at issue.

GARRISON, P.J., and CROW, J., concur.