STATE of Missouri, Plaintiff–
Respondent,

v.

Timothy R. LAWS, Defendant–
Appellant.

No. 25447.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 17, 2003.

Irene Karns, Assistant State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for Respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Timothy R. Laws ("Defendant") was convicted of forgery, in violation of § 570.090, RSMo 2000. He was sentenced as a prior and persistent offender to ten years' imprisonment. With one point relied on, Defendant contends that the trial court abused its discretion by allowing testimony regarding two other alleged forged checks because such testimony constituted evidence of uncharged crimes and thereby prejudiced Defendant.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence at trial showed that during the night of August 24, 2001, Defendant's former employer, Allen Brewer, was awakened by the sound of a vehicle, but did not investigate. When Brewer, who was a farmer, next went to his shop on Monday, August 27, 2001, he discovered that the glove box in his truck had been opened and papers kept inside of it strewn about the cab. The checkbook normally kept in the glove box was missing.

Brewer contacted the bank and later that week was notified that three checks had been passed on the account, one to Huck's Fuel and Food ("Huck's"), another to Ramey's Supermarket ("Ramey's"), and

the third to Windmill Package Store ("Windmill"). All checks were written on August 25, 2001. In each case, the check was written for more than the amount of purchase, and the person passing the checks received cash in return. Brewer had not signed any of the checks, nor had he authorized anyone else to write checks on that account.

Huck's had a videotape of someone presenting one of the checks to purchase beer. Brewer identified the person in the video as Defendant. Although the clerk who accepted the check at Huck's, Vicki Ketch, was not able to recognize Defendant from the videotape, she did later identify Defendant from a photo lineup as being the person who presented the check.

Defendant was charged by information on January 9, 2002, with one count of the class C felony of forgery, in violation of § 570.090, RSMo 2000. The count referenced the check presented to Huck's. An amended information was filed on October 23, 2002, which contained information regarding Defendant's status as a prior and persistent offender.

On November 5, 2002, Defendant's counsel filed a motion in limine contending that allowing testimony relating to alleged forged checks written on the same day to Ramey's and Windmill would unfairly prejudice Defendant and would be inadmissible as evidence of uncharged crimes. The court determined that the State's witnesses noted in the motion would be allowed to testify regarding identification of Defendant.

■ During the prosecutor's opening argument, defense counsel asked to renew her motion in limine and objection to testimony regarding the other two checks. The trial court overruled the objection, but allowed defense counsel a continuing objection on the issue.[1]

---

**1.** In his brief, Defendant argues that although

defense counsel failed to approach the bench

At the trial held on November 12, 2002, the State presented as exhibits the check presented to Huck's and photocopies of checks presented to Ramey's and Windmill. In addition, the State called as witnesses Ashley Harris and Shannon Rodriguez, who were clerks working on August 25, 2001 at Ramey's and Windmill, respectively.

Harris testified that Defendant purchased groceries and some diapers at Ramey's on August 25, 2001, with a check written on Brewer's account and that she knew Defendant because he "[came] in the store quite a bit." She also identified Defendant from a photo lineup shown to her by the Sheriff's Department after the incident.

Rodriguez testified that Defendant and a woman came to the drive-up window at Windmill and purchased gasoline and cigarettes on August 25, 2001, with a check written on Brewer's account. Rodriguez was acquainted with Defendant because they had attended the same high school and she saw him "every day" during that time. Similar to Harris and Kelch, Rodriguez picked out Defendant's picture from a photo lineup.

The jury found Defendant guilty of forgery. The sentencing date was set and the trial court increased Defendant's bond.

The docket reflects that Defendant failed to appear for sentencing on January 22, 2003. The trial court forfeited his bond and a warrant was issued for his arrest on February 6, 2003. Defendant was returned to custody on February 9, 2003, and sentenced as a prior and persistent offender on February 10, 2003, to ten years' imprisonment. This appeal followed.

In his single point relied on, Defendant contends that the trial court abused its discretion by allowing the testimony of Harris and Rodriguez regarding the two other alleged forged checks passed on Brewer's account on August 25, 2001. Defendant argues that he was prejudiced by this evidence of uncharged crimes.

 Before addressing the point on its merits, the State urges us to dismiss the appeal based on the escape rule, which operates to deny the right of an appeal to a defendant who escapes justice. *State v. Troupe*, 891 S.W.2d 808, 809 (Mo.banc 1995). Dismissing an appeal is appropriate when it is determined that the escape adversely affects the criminal justice system. *Id.* at 811. The Missouri Supreme Court has stated that the rule may be applied even if the appellate process itself is not substantially affected. *Id.* at 810. Whether to apply the rule is left to the sound discretion of the appellate court. *Id.* at 811.

Cases may be found in which an appellate tribunal applied the rule, as well as cases in which an appellate tribunal determined the situation did not warrant application of the rule. *See, e.g., State v. Massey*, 98 S.W.3d 105, 107 (Mo.App.2003) (applied rule where sentencing delayed by more than four months) and *State v. Janson*, 964 S.W.2d 552, 554 (Mo.App.1998) (rule not applied where Defendant gone for 15 days and did not pose danger to society). Cases also exist where the appellate court has exercised its discretion not to apply the rule even though the situation may have warranted it. *State v. Collins*, 42 S.W.3d 736, 738 (Mo.App.2001).

as each of the State's witnesses noted in the motion in limine testified, the issue was still preserved for review. The State concedes that the issue was preserved based on the trial court's grant of defense counsel's request for

a continuing objection. We agree that defense counsel's actions were adequate to preserve the issue for appeal. *See State v. Collins*, 962 S.W.2d 421, 424 (Mo.App.1998).

The circumstances here are best reflected by *Janson.* Due to Defendant's failure to appear, the sentencing was delayed 19 days. Also similar to *Janson,* there is nothing in the record to indicate that Defendant posed a threat to society or that he caused any harm to anyone during his escape. *Janson,* 964 S.W.2d at 554.

■ Although we do not condone Defendant's actions, we use our discretion to not apply the escape rule in this case and proceed to review Defendant's point on appeal.

■ A trial court has broad discretion in deciding whether or not to admit evidence and we will not disturb its decision unless a clear abuse of discretion is shown. *State v. Scurlock,* 998 S.W.2d 578, 587 (Mo.App.1999). For error to be considered reversible error, it is necessary for Defendant to show not only that the challenged testimony of Harris and Rodriguez was inadmissible, but that it was also prejudicial or that there was a reasonable probability that the verdict would have been different in the absence of the evidence. *Id.*

■ It is a well-established principle that evidence of other crimes is generally inadmissible. *State v. Boley,* 565 S.W.2d 828, 830 (Mo.App.1978). There are, however, well-established exceptions to the general rule that permit the introduction of such evidence for some other purpose than to show that the defendant, by virtue of the criminal nature evidenced by proof of the other crime(s), had a greater likelihood of committing the crime with which he or she is charged. *State v. Mercado,* 787 S.W.2d 848, 851 (Mo.App.1990).

Evidence of uncharged crimes has been found to be logically and legally relevant and therefore, admissible to show: motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the person charged. *Scurlock,* 998 S.W.2d at 588.

Based on these exceptions, we find that Defendant's point is without merit. The evidence presented is perhaps one of the best examples of a common scheme or plan. In each case, Defendant presented a check for purchase of items that purported to contain Brewer's signature and received the purchased items plus cash in return. "It would be difficult to conceive of a better example of a 'common scheme' than was shown here in the preparation and passing of these various checks." *State v. Burnett,* 429 S.W.2d 239, 244 (Mo.1968) (quoting *State v. Adamson,* 346 S.W.2d 85, 88 (Mo.1961)). Evidence of the integral parts of the scheme are admissible to prove elements of the State's case, which here would include a "purpose to defraud" as found in § 570.090, RSMo 2000. *See Burnett,* 429 S.W.2d at 244.

We note that the trial court in the case at bar admitted the testimony of Harris and Rodriguez under the identity exception. This is of no consequence as we find that the evidence met at least one of the recognized exceptions, that of a common scheme or plan. *Mercado,* 787 S.W.2d at 851. We need not address whether it may have met the identity exception as well. *See id.*

The judgment is affirmed.

BARNEY, P.J., and GARRISON, J., concur.